

1  Patricia M. Hernandez
2  1980 Tobago Avenue
   San Jose, CA 95122
3
   Telephone:  408-971-4272
4
5  Plaintiff

6                UNITED STATES DISTRICT COURT

7              NOTHERN DISTRICT OF CALIFORNIA

8                   SAN JOSE DIVISION

9                                          C08 01630
                                                    PVT
10  PATRICIA M. HERNANDEZ, individually and  )  Case No.:
    on behalf of the general public,          )
11                                            )  COMPLAINT FOR RESCISSION,
                  Plaintiff,                  )  DAMAGES, INJUNCTIVE RELIEF,
12                                            )  AND DECLARATORY RELIEF
                  vs.                         )
13                                            )
    PATRICIA ALVAREZ; GLORIA ALVAREZ;         )
14  BIC D. PHO; DAVID MCCAIN; VISION          )  DEMAND FOR JURY TRIAL
    QUEST 21, INC., a California Corporation doing  )
15  business as Century 21 Su Casa, Su Casa Realty,  )
    Aborn Prestige Homes & Estates, Aborn Prestige  )
16  Properties, Century 21 Ruby, Century 21 Fine  )
    Homes & Estates, Ruby Prestige Homes & Estates,  )
17  and Ruby Prestige Properties; EDDIE BURNIAS;  )
    MARIO BURNIAS; MARIPOSA MORTGAGE        )
18  INC., a California Corporation doing business as  )
    Mariposa Mortgage, Mariposa Mortgage of   )
19  Almaden, and Mariposa Mortgage West; HILTON  )
    STANLEY CAPITAL, a Nevada Corporation     )
20  doing business as Golden Image Group, Realty  )
    Executives Golden Image, Realty Executives  )
21  Golden Image Group; JOANNE WONG;          )
    MICHAEL ANDIN; COUNTRYWIDE BANK,         )
22  FSB; DEANNA GLOVER; MARIA ANTUNES;       )
    THE CLOSING COMPANY – ESCROW            )
23  SERVICE; MARIA RODRIGUEZ; E.             )
    SALAZAR; DARRELL KETTNER;                )
24  AEQUITAS APPRAISAL GROUP,                )
    ALEJANDRA ANDRADE, ENRIQUE              )
25  AMEZCUA, and DOES I to 50, inclusive;     )
                                              )
26                Defendants,                 )
                                              )
27                                            )
28

                              – 1 –

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

## INTRODUCTION

1.     Defendants in this action preyed upon Plaintiff through predatory and abusive lending practices, including making misrepresentations about essential terms of the loans, using bait and switch tactics and duress, charging unreasonable and unearned fees, falsifying information on loan applications, failing to translate important loan documents from English to Spanish, and including problematic loan terms such as pre-payment penalties and negative amortization.  Plaintiff seeks rescission of the predatory loans in which she is trapped, equitable relief, declaratory relief, and monetary damages.

## JURISDICTION AND VENUE

2.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. Section 1331 in that the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 to hear and determine Plaintiff's state law claims because those claims are related to Plaintiff's federal claims and arise out of a common nucleus of related facts and form part of the same case or controversy under Article III of the United States Constitution.

3.     The Court has jurisdiction over Plaintiff's action for declaratory relief pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. Section 2203 and Rule 65 of the Federal Rules of Civil Procedure.

4.     Venue is proper in the Northern District of California Pursuant to 28 U.S.C. Section 1391(b)(2) in that the unlawful conduct that gave rise to these claims occurred within the Northern District of California.

## INTRADISTRICT ASSIGNMENT

5.     Intradistrict assignment in San Jose, California is proper because the unlawful conduct that gives rise to the alleged claims occurred in Santa Clara County.

//

//

//

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

PARTIES

6.    I, Patricia M. Hernandez, ("Plaintiff," "I," "My," or "Me") am a Hispanic woman who traces my national origin to Mexico.  At all relevant times alleged herein, I was over the age of 18 and a resident of Santa Clara County.

7.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Patricia Alvarez was and is a natural person over the age of 18; is not now nor ever was a licensed real estate agent by the State of California Department of Real Estate ("DRE"); and was or is an employee and agent of Defendant Vision Quest 21, Inc. and all of the companies under which it does business.

8.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Patricia Alvarez acted as an agent and/or employee of Defendants Hilton Stanley Capital, Mariposa Mortgage, Eddie Burnias, and Mario Burnias in making loans to finance the purchase of the property located in Santa Clara County.

9.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Gloria Alvarez was and is a natural person over the age of 18, a real estate agent licensed by the DRE, and an employee and agent of Defendant Vision Quest 21, Inc. and all of the companies under which it does business.

10.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Gloria Alvarez acted as an agent and/or employee of Defendants Hilton Stanley Capital, Mariposa Mortgage, Eddie Burnias, and Mario Burnias in making loans to finance the purchase of properties located in Santa Clara County.

11.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Bic D. Pho ("Pho"), also known as Bick D. Pho, was and is a natural person over the age of 18 and was or is a licensed real estate broker by the DRE.  I am also informed and believe that Defendant Pho was or is the Designated Officer for Defendant Vision Quest 21, Inc., and was or is an officer of Defendant Mariposa Mortgage, Inc., and has or had an ownership interest in Defendant the Closing Company – Escrow Services.

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

12.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant David McCain ("McCain") was and is a licensed broker by the DRE; was or is an Officer of Defendant Vision Quest 21, Inc.; did or does have an ownership interest in Defendant Vision Quest 21, Inc., and did or does business in Santa Clara County.

13.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Vision Quest 21, Inc. ("Vision Quest") was and is a corporation organized and existing under the laws of the State of California and did or does business as Century 21 Su Casa, Su Casa Realty, Aborn Prestige Homes & Estates, Aborn Prestige Properties, Century 21 Ruby, Century 21 Fine Homes & Estates, Ruby Prestige Homes & Estates, and Ruby Prestige Properties in Santa Clara County.

14.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Vision Quest was and is licensed by the DRE as a real estate broker by designating an officer who held or holds a valid real estate broker's license.

15.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Vision Quest's business activity within Santa Clara County included the brokerage of real estate and representation of parties in residential real estate transactions, as well as soliciting and negotiating loans secured by liens on real property.

16.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Mariposa Mortgage, Inc. ("Mariposa") was and is a corporation organized and existing under the laws of the State of California.

17.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Mariposa was licensed by the DRE as a real estate broker by designating an officer who held or who holds a valid real estate broker's license.  I am informed and believe that Defendant Mariposa's present designated officer is Defendant Mario Burnias; that Defendant Pho is the former Designated Officer of Defendant Mariposa; and that Defendant Pho is or was an officer of Defendant Mariposa.  I am informed and believe that Defendant Mariposa's business activity within the County of Santa Clara included or

– 4 –

includes the brokerage of residential real estate mortgage loans and representation of borrowers in residential real estate transactions.

18.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Hilton Stanley Capital ("HSC") was and is a Nevada corporation qualified to do business in the State of California as a foreign corporation, and regularly conducted or conducts business activity in Santa Clara County and with Santa Clara County residents.

19.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant HSC did or does business as Golden Image Group, Realty Executives Golden Image, Realty Executives Golden Image Group in Santa Clara County.

20.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant HSC was and is licensed by the DRE as a real estate broker by designating an officer who holds or held a valid real estate broker's license. Defendant HSC's designated officer was or is Defendant Mario Burnias.

21.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Mario Burnias was and is a natural person over the age of 18; is a licensed real estate broker by the DRE; was or is the designated officer for Defendant HSC; and regularly conducted or conducts business activity in Santa Clara County and with Santa Clara County residents.

22.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Eddie Burnias was and is a natural person over the age of 18; who was or is a licensed real estate agent.

23.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Eddie Burnias was or is an employee and agent for defendant HSC; was or is an employee and loan agent for Defendant Mariposa; was or is an employee agent for Vision Quest, and regularly conducted or conducts business activity in Santa Clara County and with Santa Clara County residents.

- 5 -

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

24.   At all relevant times mentioned in this complaint, I am informed and believe that Defendant Joanne Wong was or is an agent and employed by Defendant Countrywide Bank FSB and regularly conducted or conducts business activity in Santa Clara County and with Santa Clara County residents.

25.   At all relevant times mentioned in this complaint, I am informed and believe that Defendant Michael Andin was or is an agent and employed by Defendant Countrywide Bank FSB and regularly conducted or conducts business activity in Santa Clara County and with Santa Clara County residents.

26.   At all relevant times mentioned in this complaint, I am informed and believe that Defendant Countrywide Bank FSB ("Countrywide") is a Delaware corporation qualified to do business in the State of California as a foreign corporation, and regularly conducts business activity in Santa Clara County, including the acquisition or servicing of loans secured by residential real estate and the origination of sub-prime loans to borrowers in residential real estate transactions in Santa Clara County residents.

27.   I am informed and believe that Defendant Countrywide made two or more high cost loans, as defined by 15 U.S.C. § 1602(aa), in the 12 months preceding issuing loans that encumber the residential property at Tobago Avenue and that is at issue in this complaint.

28.   At all relevant times mentioned in this complaint, I am informed and believe that Defendant Countrywide extended credit of more than $1 million in each of the following years: 2005, 2006, and 2007.

29.   At all relevant times mentioned in this complaint, I am informed and believe that Defendant Countrywide is a creditor that regularly extended credit and extended far more than five residential real estate loans in 2006 and 2007.

30.   At all relevant times mentioned in this complaint, I am informed and believe that Defendant The Closing Company – Escrow Service ("Closing Company") was and is a corporation organized and existing under the laws of the State of California and provided or provides escrow services to borrowers in Santa Clara County.

- 6 -

31.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Pho was and is the chief financial officer for Defendant Closing Company.

32.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Maria Antunes was and is a natural person over the age of 18; is a licensed real estate agent by the DRE; served or serves in the capacities of chief executive officer, president, secretary, employee, and agent of Defendant Closing Company, and regularly conducted or conducts business activity in Santa Clara County and with Santa Clara County residents.

33.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Maria Antunes was and is an agent or employee of Vision Quest and all companies under which it does business and regularly conducted or conducts business in Santa Clara County.

34.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Deanna Glover was or is an agent and/or employee of Defendant Closing Company and regularly conducted or conducts business in Santa Clara County.

35.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Maria Rodriguez was and is a natural person over the age of 18 and resident of Santa Clara County and agent or employee of the other defendants named in this action.

36.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Alejandra Andrade was and is a natural person over the age of 18; resident of Santa Clara County; family member and/or personal friend of Defendants Patricia Alvarez and Gloria Alvarez; and agent or employee of the other Defendants named in this action.

37.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Enrique Amezcua was and is a natural person over the age of 18; resident of Santa Clara County; family member and/or personal friend of Defendants Patricia

- 7 -

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

Alvarez and Gloria Alvarez; and agent or employee of the other Defendants named in this action.

38.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant E. Salazar, also known as Erika Salazar, was and is a natural person over the age of 18; a resident of Santa Clara County; and agent or employee of the other Defendants named in this action.

39.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant E. Salazar was or is a notary public; is licensed by the State of California; and who regularly conducted or conducts business in Santa Clara County under Commission Number 1677943.

40.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Darrell Kettner was and is a natural person over the age of 18; resident of Santa Clara County; and is or was an Appraiser licensed by the California Office of Real Estate Appraisers, license number 030910.

41.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Darrell Kettner maintains an ownership interest in Defendant Aequitas Appraisal Group and regularly conducts or conducted business in his own name and on behalf of Aequitas Appraisal Group in Santa Clara County.

42.    At all relevant times mentioned in this complaint, I am informed and believe that Defendant Darrell Kettner was or is an agent and or employee of the other Defendants named in this complaint.

43.    At all relevant times alleged herein, all of the Defendants were agents, servants and/or employees of each other and were acting within the scope of such agency or employment while engaged in the acts, omissions and other conduct alleged in this complaint, or the alleged acts, omissions and other conduct of each Defendant were subsequently ratified or adopted by the other defendants.

### FACTUAL ALLEGATIONS

44.    I am a divorced woman and support two minor children, ages 14 and 17.

45.    I trace my national origin to Mexico and my primary language is Spanish.

46.    I speak, understand, and read some English, but rely on my primary language of Spanish when conducting personal transactions.

47.    I currently reside at 1980 Tobago Ave., San Jose, California ("Tobago Ave. Property").

48.    Prior to residing at the Tobago Ave. Property, I resided at 1547 Flanigan Drive in San Jose, California, an apartment complex, for approximately five years and last paid rent in December of 2006 at a rate of $825.00 per month.

49.    In October of 2006, my brother and I decided that we wanted to purchase a home instead of continuing to rent an apartment.

50.    In October of 2006, I was employed as a Porter; earned approximately $1,500 per month in take-home pay; and received $500 per month in child support.

51.    In October of 2006, I was informed and believed that my brother earned approximately $2,000 per month in income and that our combined incomes would be sufficient to qualify to purchase a home.

52.    In October of 2006, I noticed an advertisement in El Aguila, a Spanish-language newspaper, for real estate services offered by Defendant Gloria Alvarez.

53.    The advertisement stated that Defendant Gloria Alvarez was employed by Century 21 Su Casa as a real estate agent; that she was a Realtor; that she spoke Spanish; and that she was willing to assist people in purchasing homes. This large ad led me to believe that this Century 21 Su Casa agent was serious and trustworthy.

54.    In October of 2006, I contacted the Century 21 Su Casa office at 996 S. King Road in San Jose, California ("Century 21 Su Casa office") and asked to speak with Defendant Gloria Alvarez.

55.    Instead of speaking with Defendant Gloria Alvarez, I was directed to speak with Defendant Patricia Alvarez, who scheduled an appointment for me to come in and discuss my interest in purchasing a home.

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

56.    In October of 2006, I visited the Century 21 Su Casa office and met with Defendant Patricia Alvarez.

57.    During all of our meetings and conversations, Defendant Patricia Alvarez and I spoke in Spanish.

58.    During our meeting, Defendant Patricia Alvarez stated that Defendant Gloria Alvarez was her sister and manager.  Defendant Patricia Alvarez stated to me that she sold and represented owners of homes listed for sale.

59.    During our meeting, Defendant Patricia Alvarez asked me what I could afford to pay in monthly mortgage payments.  I responded that I believed that my brother and I could afford a monthly payment of $2,000.

60.    During this meeting, I told Defendant Patricia Alvarez that my brother and I were seeking to purchase a home with three bedrooms and two baths, and that we would rent out a room in our home to assist us in paying the mortgage.

61.    Defendant Patricia Alvarez stated that my monthly payments might exceed $2,000, and might be as high as $2,700 per month, which I believed that my brother and I could afford.

62.    During this meeting, Defendant Patricia Alvarez presented me with a document printed in English.  Defendant Patricia Alvarez explained that this document would allow her to represent me in negotiations to purchase a home.

63.    I am now informed and believe that Defendant Patricia Alvarez was never licensed to serve as a real estate agent and that she knew of the falsity of these statements when she made to me in October of 2006.

64.    I reasonably relied on Defendant Patricia Alvarez's statements and actions that, inter alia, she could act as my real estate agent, and I signed what I understood to be a representation agreement.

65.    Defendant Patricia Alvarez did not provide me with a copy of this representation agreement, stating that, instead, she would gather all of the documents

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

during the course of the home purchase and financing transactions and would provide these documents to me at a later date.

66. Defendant Patricia Alvarez provided me with her cell phone number, and that of her manager, Defendant Gloria Alvarez, and stated to me that in her absence that I could contact Defendant Gloria Alvarez for assistance.

67. At Defendant Patricia Alvarez's request, in October of 2006, I provided her with copies of pay check stubs and my bank account statement.

68. In October of 2006 I had less than one thousand dollars in my bank account.

69. At no time during our interaction in October of 2006 did Defendant Patricia Alvarez request details about the condition of my credit and/or my economic condition.

70. In October of 2006, Defendant Patricia Alvarez took me to see three separate homes that she claimed were not yet available on the market, and that she would be serving as the sales agent for at least two of these homes.

71. Defendant Patricia Alvarez was aware that I was seeking to purchase a home in a new location, outside of the McLaughlin Avenue at Tully Road intersection of San Jose. Two of the homes that she urged me to visit were homes that I understood and believed that she would be offering in the near future.

72. Defendant Patricia Alvarez urged me to view this still unlisted property because she could aid me in securing one of these properties more easily in what she represented to be a fast-paced market.

73. Based on her representations, I accompanied Defendant Patricia Alvarez to visit a condominium in the McLaughlin Avenue and Tully Road area of San Jose.

74. Defendant Patricia Alvarez stated that the owner was asking $475,000 for this three bedroom one bath condominium that was not yet on the market. Defendant Patricia Alvarez led me to believe that this home would sell quickly at the listed sales price.

75. When I expressed my doubts and concerns about the neighborhood, Defendant Patricia Alvarez responded that I could not be so particular and that I needed to get what I could get.

- 11 -

76.    Defendant Patricia Alvarez showed me a second property near the McLaughlin Ave. and Tully Road area, which she stated was a single family residential home and was not yet on the market.

77.    Defendant Patricia Alvarez drove me to this property, which was and is the Tobago Ave. Property that is at issue in this complaint.

78.    The Tobago Ave. Property is a duet home, which shares a common wall with the adjacent home, and contains two bedrooms and one bath.

79.    Defendant Patricia Alvarez encouraged me to submit an offer on this property because she would be placing it on the market in the near future and that it would sell quickly.

80.    Defendant Patricia Alvarez represented to me that the Tobago Ave. Property had recently been improved and that it was perfect for a small family like mine.  When I expressed my concerns about the home and the location, Defendant Patricia Alvarez stated that for practically the same price I would pay for a condominium, $470,000, that I could purchase the Tobago Ave. Property.  She stated that the home would appreciate and that I could use the equity to purchase another home in the near future.

81.    Defendant Patricia Alvarez's statements to me that she: 1) was authorized to act as the seller's agent; 2) authorized to act as my agent; 3) and authorized to submit offers and represent me in a real estate transaction were false and Defendant Patricia Alvarez knew of the falsity of these statements that she made to me.

82.    Defendant Patricia Alvarez made these statements with the intent that I rely on these statements.

83.    Based on my reasonable reliance on her representations, I decided to submit an offer on the Tobago Ave. Property and offered the $470,000 that Defendant Patricia Alvarez had recommended.

84.    On the same day that I had visited the property, Defendant Patricia Alvarez stated to me that she would prepare the offer.  We traveled back to the Century 21 Su Casa

- 12 -

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

office and Defendant Patricia Alvarez completed a document that I was informed and believed to be the purchase offer. This document was printed in English.

85.  Defendant Patricia Alvarez directed me to sign these documents and stated that she would submit my offer and advise me of the owner's decision.

86.  Defendant Patricia Alvarez did not provide me with a copy of this document.

87.  Defendant Patricia Alvarez contacted me shortly thereafter, sometime in October 2006, and advised me that my offer had been accepted and asked that I go to her Century 21 Su Casa office.

88.  Shortly thereafter, I met with Defendant Patricia Alvarez at the Century 21 Su Casa office.

89.  Although Defendant Patricia Alvarez had represented to me that my offer for the Tobago Ave. Property had been accepted, she advised me at our meeting that she had actually increased my offer because the seller had demanded a higher purchase price.

90.  At no time prior to this had Defendant Patricia Alvarez advised me that the seller of the Tobago Ave. Property was requesting a higher sales price.

91.  At no time did I sign a revised offer or counteroffer that authorized Defendant Patricia Alvarez to submit an increased purchase offer.

92.  When I inquired how much more I would have to pay in monthly mortgage payments, Defendant Patricia Alvarez assured me that it would work out; that my monthly mortgage payments would not increase substantially, if at all; and that I should not worry.

93.  Defendant Patricia Alvarez stated that I would be in the Tobago Ave. Property by December of 2006 but never clearly identified by how much the sale price for the property had increased and instead assured me that my payment would not increase substantially, if at all.

94.  Defendant Patricia Alvarez knew that her statements that she was authorized under the laws of the State of California to: act as my real estate agent; offer a sales price to the seller of the Tobago Ave. Property without my prior permission; and that a difference in sales price would not increase my monthly mortgage payments substantially

- 13 -

were false statements; and she used these statements to induce me to continue with the purchase transaction for the Tobago Ave. Property.

95.    Defendant Patricia Alvarez intended me to rely on these statements, and I reasonably relied on her false representations and I continued with the transaction.

96.    Defendant Patricia Alvarez directed me to Defendant Eddie Burnias, who could provide loan brokerage services.

97.    At no time did Defendant Patricia Alvarez advise me that I could seek the loan broker services of another person. Instead, Defendant Patricia Alvarez led me to believe that Defendant Eddie Burnias was the broker that her office relied upon to help people get home loans.

98.    At no time did Defendant Patricia Alvarez describe any of the close relationships held by Defendants Pho and Vision Quest to Mariposa Mortgage, HSC, and Closing Company, nor the close personal and/or familial relationship that I now understand that she had with the sellers of the Tobago Ave. Property.

99.    In early November of 2006, I met with Defendant Eddie Burnias at the Century 21 Su Casa office. Defendant Patricia Alvarez was present during all of my meetings with Defendant Eddie Burnias, and Defendants Patricia Alvarez and Eddie Burnias spoke to me exclusively in Spanish at all times and throughout our meetings.

100.    I understood and believed that Defendant Patricia Alvarez had provided Defendant Eddie Burnias with copies of the check stubs and bank statements that I had, earlier, provided to her.

101.    On November 11, 2006, Defendant Eddie Burnias, acting as an employee or agent of Defendants HSC and Mariposa, completed or caused to have completed a Good Faith Estimate that was printed in the English language, indicating that Defendant HSC was the broker for the transaction.

102.    Defendant Eddie Burnias, acting as an employee or agent of Defendant HSC and Mariposa, explained that I would be qualifying for a loan at a fixed rate of 1% interest

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

per year and that the loan would contain a prepayment penalty provision if I tried to refinance the loan, but not if I sold the home.

103.    Defendants Eddie Burnias and Patricia Alvarez stated that I would be receiving a negative amortization loan and stated that this was a good loan, but they did not explain why this loan was good.

104.    Defendants Eddie Burnias and Patricia Alvarez stated the value of the Tobago Ave. Property would increase and that I could use the equity to purchase a different home in the near future.

105.    Defendant Patricia Alvarez requested that I submit a deposit of $1,000, and shortly thereafter I provided her with $1,000.

106.    In November of 2006 I stated to a friend that I was attempting to purchase a home and that I had qualified for a home loan that was a negative amortization loan. My friend stated that she had heard bad things about negative amortization loans.

107.    Concerned about what my friend had stated, I attempted to contact Defendant Patricia Alvarez at the Century 21 Su Casa office to discuss my concerns. I was told that defendant Alvarez was out of the country, and I was directed to Defendant Gloria Alvarez, whom I had been told was Defendant Patricia Alvarez's manager.

108.    At all times mentioned in this complaint, Defendant Gloria Alvarez and I spoke in Spanish.

109.    Defendant Gloria Alvarez addressed several of my concerns about a negative amortization loan, and she stated that Defendant Patricia Alvarez would be returning back to the country shortly and to contact her about my additional concerns.

110.    Shortly thereafter, Defendant Patricia Alvarez contacted me and advised me that the loan for which I had qualified had favorable terms and was a unique loan product that was not available to all consumers.

111.    I understood and believed that the loan for which I had qualified was a good loan product and that it contained favorable terms.

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

112.    Defendants Gloria Alvarez, Patricia Alvarez, and Eddie Burnias knew that their statements that the loan product that they offered was not a loan with favorable terms and made their statements so that I would rely on these statements.

113.    Based on their representations, and my reasonable belief that they were each licensed and experienced real estate professionals, I reasonably relied upon their statements and continued with the transaction.

114.    In January of 2007, Defendant Patricia Alvarez stated that I would need to sign more documents related to the purchase of the Tobago Ave. Property.

115.    On or about January 11, 2007, I met with Defendant Patricia Alvarez and a notary public at the Century 21 Su Casa office to sign what I understood to be loan document papers.

116.    I understand and believe that Defendant Gloria Alvarez's son acted as the notary when I signed these loan documents on or about January 11, 2007.

117.    At all relevant times on or about January 11, 2007, I spoke to all parties at the Century 21 Su Casa office in Spanish.

118.    All of the documents presented for my signature were printed in English and no Spanish language translation was provided to me.

119.    Defendant Patricia Alvarez and the notary directed me where I was required to sign on these documents, but none of these documents that I signed was explained or translated into Spanish for me.

120.    Neither Defendant Patricia Alvarez nor the notary who was present provided me with a copy of the documents that I had signed on or about January 11, 2007.

121.    Approximately two weeks later, in late January 2007, I was contacted by Defendant Patricia Alvarez to pick up what I understood were a copy of the loan documents that I had signed on or about January 11, 2007.

122.    I am informed and believe that the documents that I received in late January 2007 were incomplete and did not include critical documents, like a HUD-1; Good Faith

- 16 -

Estimate; nor any Right to Cancel Notices related to the loan documents that I had signed on or about January 11, 2007.

123.    None of the documents that I eventually received in late January 2007 were printed in Spanish, though all of my negotiations related to the home purchase and loan were conducted in Spanish.

124.    Defendants Patricia Alvarez and Eddie Burnias knew that the documents that they provided me were incomplete and that did not contain critical disclosures related to the purchase and financing of the Tobago Ave. Property; they intended me to rely on their false statements and omissions; and they used these statements and omissions to induce me into continuing with the transaction.

125.    I reasonably relied on Defendants' Patricia Alvarez's and Eddie Burnias' representations and continued with the transaction.

126.    In late January of 2007, Defendant Patricia Alvarez provided me with keys to the Tobago Ave. Property, and I was advised that the home was mine and I understood and believed that the home was my sole property.

127.    My family and I moved into the Tobago Ave. Property in late January of 2007.

128.    I was informed by and believed Defendant Patricia Alvarez's statements that my mortgage loan obligation would commence in March of 2007. In February or March of 2007, Defendant Patricia Alvarez directed me to issue a check in the amount of $2,776 to Defendant Closing Company that she stated would be forwarded by Defendant Closing Company to Defendant Countrywide as payment towards my mortgage loan.

129.    On or about March 10, 2007 I forwarded a check in the amount of $2,776 the Defendant Closing Company, which I understood and believed that they would forward to the lender to be deducted from my mortgage loan balance.

130.    In or around April of 2007, I received a loan statement from Defendant Countrywide.

- 17 -

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

131.    In April or May of 2007, I contacted Defendant Closing Company and asked when they would be forwarding my check to Defendant Countrywide. I spoke to Defendant Maria Antunes, an employee and agent of Defendant Closing Company, who stated that the $2,776 check had been applied to fees and costs associated with the loan and home purchase transaction and that I should let the matter lie.

132.    I attempted to contact Defendant Patricia Alvarez on several occasion and she never contacted me or addressed my concerns.

133.    I am now informed and believe that the payment of $2,776 that I provided to Defendant Closing Company was not deducted from my Countrywide loan balance.

134.    I am now informed and believe that the check that I forwarded to Defendant Closing Company was applied to escrow and/or title services company fees.

135.    Defendant Patricia Alvarez knew that her statements, acts, and omissions that: the loan documents that I had signed on or about January 11, 2007 were the loan documents utilized to obtain the Countrywide loans that now encumber the Tobago Ave. Property and that the $2,776 funds that I had submitted would be applied to my mortgage payment were false and she used these statements to induce me in to continuing with the purchase transaction for the Tobago Ave. Property.

136.    Defendant Patricia Alvarez intended me to rely on these statements, and I reasonably relied on her false representations and I continued with the transaction.

137.    In April or May of 2007, I received a Grant Deed, document number 19377605, that was signed by Defendant Alejandra Andrade, and which transferred her interest in the Tobago Ave. Property to me.

138.    The date of this transfer in interest from Defendant Alejandra Andrade to me occurred on January 16, 2007. This document was recorded, at the request of Old Republic Title Company, on or about April 10, 2007.

139.    Defendant Maria Antunes served as the agent who determined the transfer tax for this transfer in interest identified in Grant Deed document number 19377605 and knew

- 18 -

or should have known that the loans through Countrywide on the Tobago Ave. Property had not yet been distributed.

140.    In May or June of 2007, I received a copy of a Grant Deed, document number 19421834, which fraudulently stated that I had appeared before Defendant E. Salazar, a notary public, and had granted an interest in the Tobago Ave. Property to Defendant Maria Rodriguez on May 7, 2007.

141.    Defendant Eddie Burnias' name is present on this Grant Deed and in it he declares the value of the transfer tax.

142.    Defendant Maria Rodriguez in unknown to me.

143.    I did not appear before notary E. Salazar on May 7, 2007, nor add my thumb print to her notary journal, nor did I sign any document transferring any interest in the Tobago Ave. Property to Defendant Maria Rodriguez.

144.    Defendants Patricia Alvarez; Gloria Alvarez; Vision Quest; Pho; McCain; Eddie Burnias; Mario Burnias; HSC; Maria Antunes; Deanna Glover; Closing Company; Erika Salazar; and Maria Rodriguez knew or should have known that the transfer of interest of the Tobago Ave. was falsely obtained by forging my name to documents.

145.    I am informed and believe that the loans documents that I signed before a notary public on January 11, 2007 for the purchase of the Tobago Ave. Property were submitted to and examined by Defendant Countrywide and Defendants Joanne Wong and Michael Andin who also acted as agents and/or employees for Countrywide.

146.    I am informed and believe that the two Countrywide loans that presently encumber the Tobago Ave. Property were based upon documents that contain a signature that is not my own and that was forged to appear as if I had signed these documents on or about March 27, 2007 – not the documents that I had signed on or about January 11, 2007.

147.    I am informed and believe that the loans that presently encumber the Tobago Ave. Property were the subject of review by Countrywide and agents and employees (including Defendants Joanne Wong and Michael Andin) and, despite having the loan

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

documents that contained my actual signature from on or about January 11, 2007, that Defendant Countrywide disregarded this information.

148.    I am informed and believe that the Countywide loans that presently encumber the Tobago Ave. Property contain inferior loan terms than those for which I applied on January 11, 2007.

149.    I am informed and believe that Defendant Patricia Alvarez was an agent or employee for the Defendants Pho, McCain, Gloria Alvarez, Vision Quest, Mariposa, HSC, Eddie Burnias, Mario Burnias, Alejandra Andrade, and Enrique Amezcua and regularly communicated with these other Defendants about her representation of me in the real estate transaction associated with the Tobago Ave. Property.

150.    I am informed and believe that these other Defendants knew that Defendant Patricia Alvarez was not licensed by the DRE and could not act as my real estate agent in the purchase and financing of the Tobago Ave. Property.

151.    Defendants knew of the falsity of their representations to me that Defendant Patricia Alvarez was authorized to conduct real estate transactions and intended me to rely on these statements for economic and financial incentives.

152.    I reasonably relied on Defendant Patricia Alvarez's representations because of her direct representations to me and the authority with which she acted while interacting with the other Defendants in the course of our transaction.

153.    I am informed and believe that Defendant Gloria Alvarez acted as Defendant Patricia Alvarez's real estate sales manager and was familiar with transactions for the purchase and financing of the Tobago Ave. Property.

154.    I am informed and believe that Defendants Enrique Amezcua, Alejandra Andrade, Patricia Alvarez, and Gloria Alvarez had a preexisting personal and/or familial relationship when I sought to purchase and finance the Tobago Ave. Property, and this personal and/or familial relationship was never disclosed to me by these Defendants during the course of our dealings.

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

155.    I am informed and believe that Defendants Enrique Amezcua, Alejandra Andrade, Patricia Alvarez, and Gloria Alvarez knew of the falsity of their statements and omissions concerning their pre-existing personal and/or familial relationship and omitted this information to induce me to believe that the transaction was at arm's length.

156.    I am informed and believe that Defendant Gloria Alvarez knew of her duty as a licensed real estate agent to disclose her relationship to Defendant Alejandra Andrade and intentionally misrepresented her relationship to Defendant Alejandra Andrade to mislead me into believing the transaction in which I was engaged was at arm's length.

157.    I am informed and believe that Defendant Darrell Kettner, acting in his individual capacity and/or as an agent and/or employee of Defendant Aequitas Appraisal Company, did not produce an appraisal report that would support a contract sales price for the Tobago Ave. Property of $595,000.

158.    I am informed and believe that Defendants Darrell Kettner and Aequitas Appraisal Company provided false and/or exaggerated statements concerning the value of the Tobago Ave. Property; knew that these statements were false when they were made; and made these statements to induce me to continue with the purchase of the property so that Defendants could collect their fees.

159.    I reasonably relied upon Defendants' false statements concerning the value of the Tobago Ave. Property and continued with the transaction.

160.    I am informed and believe that Defendants Maria Antunes and Deanna Glover, acting in their individual capacities and/or as agents and employees for Defendant Closing Company and other Defendants, were aware of and processed documents that I had signed on January 11, 2007 and was familiar with my true signature.

161.    I am informed and believe that Defendants Maria Antunes; Deanna Glover; and Closing Company knew that the loan documents signed on or about March 27, 2007 by another party contained a forged signature and processed these loan documents; represented that these documents contained my true signature; and intended me to rely on

their false statements and omissions in continuing the transaction in order to collect unearned fees.

162.    I never provided $54,000 in cash funds to Defendants Maria Antunes, Deanna Glover, or Closing Company to be applied to the closing costs associated with the loans that encumber the Tobago Ave. Property.

163.    I am informed and believe that Defendants Maria Antunes and Deanna Glover, acting in their individual capacities and as employees and agents of Defendant Closing Company and other Defendants, knew of the falsity of their statements that I or someone on my behalf had submitted closing funds in the amount of $54,000.

164.    I am informed and believe that Defendant Patricia Alvarez knew of the falsity of her statements that the Tobago Ave. Property had been remodeled were grossly exaggerated.

165.    In agreeing to sign the loan documents related to the purchase and financing of the Tobago Ave. Property, I reasonably relied upon Defendants' statements, which were knowingly false and misleading.

166.    Adequate disclosures related to the purchase and financing of the Tobago Ave. Property were not provided to me, including any disclosures mandated under TILA or RESPA and California law.

167.    I trusted Defendants to be honest with me and act in my best interests and have been emotionally and physically upset over what I believe has been intentional and negligent misconduct by Defendants.

168.    Since the time of the transaction, I have learned that Defendants falsified or caused to be falsified the loan application that I signed on January 11, 2007 and the loan application that contained a forged signature purporting to be mine obtained on or around March 27, 2007.  These loan application contained many false or misleading misrepresentations concerning, inter alia, my assets, income and employment history, including the following:

    a.    That my monthly income was $13,950.

b.  That I worked as a Senior Marketing Director for Universal Management.

c.  That I maintained a savings account with $70,000 in funds.

d.  That this information was taken from an interview conducted by Defendant JoAnne Wong on behalf of Defendant Countrywide.

169.  The final HUD-1 settlement statement indicates that Defendants received the following unearned, excessive, unreasonable and/or duplicative fees in conjunction with the loan transaction:

a.  Loan Origination Fee:        $5,950

b.  Processing Fee of:           $1,600

c.  Yield Spread Premium of:     $9,520

d.  NCRR:                        $10,770

e.  Lender Closing Fee:          $725

f.  Tax Service Fee:             $80

170.  Fees that were charged in relation to the March 27, 2007 home equity line of credit included $3,980 for other charges and $1,880 in settlement agent finance charges. These fees were not disclosed on the HUD-1 settlement statement nor reflected in the TILA Disclosure Statement.

171.  Defendants also caused the final settlement statement to be falsified by fraudulently indicating thereon that I had contributed $54,000 in closing funds in the transaction to acquire the Tobago Ave. Property.

172.  The current loans which were fraudulently obtained include: a first loan from Countrywide Bank originally issued in the amount of $476,000. This loan has an adjustable interest rate that is currently 8.375% and the monthly payment amount is $1,684.10. This amount reflects the minimum payment, which does not cover principal or the full interest, therefore causing the interest to compound (also known as negative amortization). I am informed and believe that this loan contains at least a two year prepayment penalty provision, which remains in force regardless of whether

the home is refinanced or sold within the two-year period.  The present loan balance is $485,988.47.

173.    The second loan is an Equity Line of Credit from Defendant Countrywide in the original amount of $59,500.  This loan carries a variable rate of interest that is presently at 9%.  My monthly payment is $453.57, and the present balance for the Equity Line of Credit is $60,419.80.

174.    Defendants failed to explain with adequate detail the terms of the loan for which I had applied on or about January 11, 2007, nor did they provide me with a complete set of the documents that I had signed, either in English or in Spanish.

175.    The terms of the loan that presently encumber the Tobago Ave. Property were based on loan documents completed on or about March 27, 2007 and that contain my forged signature.

176.    I struggled to meet my monthly mortgage obligation and am now in danger of losing our home to foreclosure.

INJURIES

177.    Plaintiff was financially damaged by Defendants' actions, including but not limited to receiving loans inferior to those that I was promised, with higher interest rates and variable, increasing rates, paying exorbitant and unreasonable fees, paying higher monthly payments than promised, and enduring substantial damage or risk of damage to my credit.

178.    As a result of Defendants' actions in connection with the loans that encumber the Tobago Ave. Property, Plaintiff has suffered persistent emotional distress with physical manifestations.

179.    Defendants have illegally gained fees and profit from Plaintiff as described herein.  Therefore, Plaintiff is entitled to restitution.

180.    Defendants were unjustly enriched at the expense of Plaintiff, who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

– 24 –

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

181.     As a direct and proximate result of Defendants' actions, Plaintiff was and continues to be damaged in an amount according to proof but not yet ascertained including, without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

182.     There now exists an actual controversy between the parties regarding whether Plaintiff is liable for the loans obtained through Countrywide that were obtained through fraudulent acts.  Therefore, Plaintiff is entitled to declaratory relief.

183.     The monthly mortgage payments on the loans will periodically increase and either will require Plaintiff to refinance or sell the Tobago Ave. Property or force Plaintiff to face foreclosure.

184.     Unless enjoined, Defendants will continue to engage in the unlawful acts described above.  Plaintiff continues to suffer irreparable harm from Defendants unlawful acts unless relief is provided by this court.  Accordingly, Plaintiff is entitled to injunctive relief.

185.     Plaintiff believes that the acts of Defendants as described herein were willful, wanton, and in conscious disregard of the rights of Plaintiff, and on that basis allege that Plaintiff is entitled to recover punitive damages in an amount to be established at trial.

186.     Plaintiff is entitled to all statutory damages under the claims in this Complaint, including but not limited to treble damages under California Code of Civil Procedure § 1021.5.

187.     Plaintiff was financially damaged by Defendants' actions, including but not limited to: receiving loans with inferior terms than what were promised; paying exorbitant and unreasonable fees; and damaging or the risk of damage to my credit.

188.     As a result of Defendants' actions in connection with her home loans, Plaintiff has suffered persistent emotional distress with physical manifestations.

189.     Plaintiff has tendered payments to Defendants and their assignees for mortgages that were the result of fraud and not her liabilities.

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

190.     The monthly mortgage payments on the loans will periodically increase and requires Plaintiff to either refinance or sell the Tobago Ave. Property or face foreclosure.

191.     As a direct and proximate result of these violations, Plaintiff is and continues to be damaged in an amount according to proof but not yet ascertained including, without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction, excluding principal payments, if any.

CLAIMS

FIRST CLAIM<br>
Violation of the Truth In Lending Act, 15 U.S.C. § 1601 et seq. and<br>
Federal Reserve Regulation Z, 12 C.F.R. § 226 et seq.<br>
(Plaintiff against Defendant Countrywide)

192.     Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through inclusive 191, as if fully set forth herein verbatim.

193.     Defendant Countrywide is a creditor within the meaning of the Truth in Lending Act ("TILA") as implemented by Regulation Z.

194.     On information and belief, Defendant Countrywide extended a mortgage loan and a home equity line of credit ("HELOC") in March or April of 2007, that presently encumber the Tobago Ave. Property.  When extended, the mortgage loan totaled $476,000 and the HELOC totaled in the amount of $59,500.  The balance of each of these loans has since increased to $485,988.47 for the mortgage loan and $60,419.80 for the HELOC.

195.     I never signed any loan documents in or around March and April of 2007, and any documents that reportedly contain my signature were forged by another person.

196.     On information and belief, a portion of the HELOC funds were used to pay settlement costs $1,850 that included, inter alia, notary, closing agent, and title insurance, and recording fees that were never disclosed to me in a federal Truth in Lending Act Disclosure Statement or Settlement Statement.

– 26 –

197.     On information and belief, Defendants failed to disclose settlement charges associated with the extension of the mortgage loan in the amount of $476,000 and the HELOC of $59,500 made by Defendant Countrywide.  On information and belief Defendants, accepted fees that were not bona fide and reasonable and were "finance charges" under TILA that required proper disclosure as follows:

    a.   Loan Origination, processing fee and premium paid in the amount of $17,070 and shared by Defendants Patricia Alvarez, Gloria Alvarez, McCain, Vision Quest, Mariposa Mortgage; Eddie Burnias; Mario Burnias; HSC and their agents and employees.

    b.   Notary service fees paid to Defendant E. Salazar in the amount of $230.00

    c.   Appraisal Fee paid to Defendant Darrell Kettner and Defendant Aequitas Appraisal Group in the amount of $375

    d.   Closing cost and tax service fees and interest charges paid to Defendant Countrywide, Joanne Wong, and Michael Wong in the amount of $805

    e.   NRCC fees paid to undisclosed parties whom Plaintiff is informed and believes were shared by all Defendants in the amount of $10,770.

198.     Defendant Countrywide violated TILA and Regulation Z by failing to provide Plaintiff with appropriate material disclosures required under TILA.

199.     Any and all statute(s) of limitations relating to disclosures and notices required under 15 U.S.C. § 1601 et seq. were tolled due to the defendant's failure to effectively provide the required disclosures and notices.

200.     I never received a copy of any notices of any right to rescind the loans obtained through Defendant Countrywide on our around March 27, 2007.

201.     Based on information and belief, Defendant Countrywide has the obligation to rescind the loans that encumber the Tobago Ave. Property.

202.     As a direct and proximate result of these violations, I was and continue to be damaged in an amount according to proof but not yet ascertained including, without

limitation, statutory damages and all amounts paid or to be paid in connection with the

transaction, excluding principal payments, if any.

## SECOND CLAIM

Real Estate and Settlement Procedures Act, 12 U.S.C. § 2601 et seq. and
Federal Reserve Regulation X, 24 C.F.R. § 3500 et seq.
(Plaintiff against Defendants Pho, McCain, Vision Quest, Mariposa, HSC, Eddie Burnias,
Mario Burnias, Countrywide, Closing Company, E. Salazar, Darrell Kettner; and Aequitas
Appraisal Group)

203.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1

through 202 inclusive, as though fully set forth herein verbatim.

204.    The loans that encumber the Tobago Ave. Property are federally related

mortgage loans as defined in the Real Estate Settlement Procedures Act ("RESPA")

and implemented by Regulation X.

205.    HUD explained Regulation X in their Real Estate Settlement Procedures Act

Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding

Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees

Under Section 8(b), 66 F.R. 53052 ("HUD's 2001-1 Policy Statement").

206.    HUD's 2001-1 Policy Statement explains that yield spread premiums "...allow

the broker to recoup up front costs incurred on the borrower's behalf in originating the

loan." Id. At 53054.

207.    Defendants Pho, McCain, Vision Quest, Mariposa, HSC, Eddie Burnias, Mario

Burnias, Countrywide; and Closing Company allegedly collected over $54,000 in cash

from Plaintiff and, therefore, Plaintiff alleges that these Defendants did not incur any

up front costs to justify the receipt or payment of a yield spread premium.

208.    While elaborating on the test to determine the legality of yield spread

premiums, HUD's 2001-1 Policy Statement explains that the second prong of its two

part test to determine the legality of yield spread premiums may not be satisfied when

the loan broker does not offer the borrower the option to pay a lower amount of total

fees up front. See id. At 53054.

- 28 -

209.     Defendants Pho, McCain, Vision Quest, Mariposa, HSC, Eddie Burnias, Mario Burnias, Countrywide; and Closing Company failed to offer Plaintiff the option of paying a lower amount of total fees up front.

210.     The value of Defendants' Pho, McCain, Vision Quest, Mariposa, HSC, Eddie Burnias, and Mario Burnias, actual services rendered in the brokering process of the two Countrywide loans was roughly $0 because Defendants falsified or caused to be falsified Plaintiff's loan application, failed to disclose materials terms of the transaction, and failed to obtain and provide plaintiff with Spanish translations of documents as required by California Civil Code § 1632.

211.     Additionally, Defendants Pho, McCain, Vision Quest, Mariposa, HSC, Eddie Burnias, Mario Burnias charged Plaintiff a $5,950 origination fee for services that were ultimately unlawful, making the fee charged of $9,520 for a yield spread premium grossly unnecessary.

212.     Defendants' acceptance of a yield spread premium, and Defendant Countrywide's payment of that yield spread premium, was an unlawful kickback and/or unearned fee under RESPA because it was not reasonably related to the performance of lawful services.

213.     Defendant Countrywide knew or should have known that Defendants Pho, McCain, Vision Quest, Mariposa, HSC, Eddie Burnias, Mario Burnias did not earn the yield spread premium because, inter alia, "...common industry practice is that lenders follow underwriting standards that demand a review of originations and therefore lenders typically know that brokers have performed the services required..." HUD's 2001-1 Policy Statement at 53055.  If Defendant Countrywide had reviewed the loan origination and loan application documents and fees charged by Defendants, Defendant Countrywide would have learned of the obvious red flags they contained.

214.     RESPA also prohibits any person from accepting an excessive or unearned fee.

215.     Defendant E. Salazar accepted notary fees of $230 for services that were never performed, namely meeting with and witnessing Plaintiff's signature upon a Deed of

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

Trust on or about March 27, 2007.  This was a violation of RESPA because Defendant E. Salazar either accepted fees which she did not earn and was excessive.

216.    Defendant Closing Company accepted unearned fees in the amount of $460 for document preparation, courier, wire fees, and loan tie in fees on or about March and April of 2007 that were charged in association with an escrow transaction that were based on fraudulent loan documents that plaintiff understands and believes Closing Company's agents knew to be fraudulent.

217.    Defendant Darrell Kettner and Aequitas Appraisal Group accepted unearned fees for the production of an appraisal report that Plaintiff is informed and believes does not support the contract sales price of $595,000.

218.    Pursuant to 12 U.S.C. § 2607(d), Plaintiff is entitled to recover from Defendants Pho, McCain, Vision Quest, Mariposa, HSC, Eddie Burnias, Mario Burnias, Countrywide, Closing Company, E. Salazar, Darrell Kettner; and Aequitas Appraisal Group an amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by Plaintiff, as well as actual damages, court costs, attorneys' fees and any other amounts or damages permissible under RESPA.

219.    By the actions described herein and as a proximate cause of Defendants' Pho, McCain, Vision Quest, Mariposa, HSC, Eddie Burnias, Mario Burnias, Countrywide, Closing Company, E. Salazar, Darrell Kettner, and Aequitas Appraisal Group conduct, Plaintiff was damaged, in an amount to be proven at trial but not yet ascertained.

THIRD CLAIM
Violation of the Unfair Competition Act
California Business and Professions Code § 17200 et seq.
(Plaintiff against Defendants Pho, McCain, Vision Quest, Mariposa, HSC, Eddie Burnias, Mario Burnias, Countrywide, Closing Company, E. Salazar, Darrell Kettner, and Aequitas Appraisal Group)

220.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 219, inclusive, and the allegations in all of the other claims alleged in this complaint, as if fully set forth herein verbatim.

- 30 -

221.    Plaintiff is informed and believes, and on that basis alleges, that Defendants have been engaged in, and continue to engage in, numerous acts and/or a pattern and practice of unfair competition within the State of California in violation of Business and Professions Code § 17200 et seq., proscribing deceptive business practices. These unfair business practices include, without limitation, the following:

a.    Engaging in predatory lending practices in dealings with Plaintiff including, but not limited to, the use of high pressure sales tactics and the falsification of loan application information;

b.    Self-dealing at the expense of borrowers;

c.    Failing to provide notices and disclosures required by TILA and RESPA;

d.    Violating TILA; violating RESPA; violating the False Advertising Act, California Business and Professions Code § 17500 et seq., or any other applicable statute;

e.    Failing to provide Spanish translations as required by California Civil Code § 1632;

f.    Forgery of a signature on an instrument conveying title to real property; and

g.    Charging and collecting notary fees in excess than those permitted under statute.

222.    The above-described unlawful, unfair and fraudulent business practices are an ongoing threat of injury to Plaintiff. Plaintiff continues to be financially harmed by such conduct and, unless restrained, Defendants will continue to engage in such conduct.

223.    Pursuant to California Business and Professions Code § 17203, Plaintiff is entitled to an order of this Court enjoining Defendants from continuing to engage in unfair competition, as defined in Business and Professions Code § 17200, in the State of California. Plaintiff will be irreparably harmed if such an order is not granted.

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

224.    Defendants have been unjustly enriched at the expense of the Plaintiff who, therefore, is entitled to equitable restitution and disgorgement of profits realized by Defendants.

FOURTH CLAIM
Fraud
(Plaintiff against all Defendants)

225.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 224, inclusive, as if fully set forth herein verbatim.

226.    Plaintiff is informed and believes that Defendants knowingly designed the Tobago Ave. Property transaction in such a manner so as to have the loans made by Defendant Countrywide fail.

227.    Defendants designed the loans to fail by inflating the value of the property so as to prevent their own loss and/or interest in the property; make plaintiff liable for the default in loan mortgage payments without concern for the injury to plaintiff's credit; and collect excessive and unearned fees in the sale and financing of the Tobago Ave. Property.

228.    Among other things, Defendants falsely represented to Plaintiff:

   a.   The actual amount of the monthly mortgage obligation;

   b.   The actual amount of the sales price for the Tobago Ave. Property to Plaintiff;

   c.   That Plaintiff was qualified to borrow enough money to purchase the Tobago Ave. property; and

   d.   That Defendant Patricia Alvarez was authorized as a real estate agent by the DRE to act as Plaintiff's agent in negotiation the sale price terms and financing terms for the Tobago Ave. Property.

   e.   That Plaintiff's loan obligations were based on the loan documents that she had signed on or about January 11, 2007; and

   f.   That the funds of $2,776 submitted by Plaintiff to Defendant Countrywide on or about March 10, 2007, to be used toward her mortgage payments, were

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

instead applied instead without my knowledge to the closing costs associated with the loans fraudulently obtained on or about March 27, 2007.

229.    Defendants knew that these representations were false at the time they were made or made the false representations in reckless disregard of the truth.

230.    Defendants intended that Plaintiff rely on the misrepresentations.

231.    Plaintiff reasonably relied on Defendants' misrepresentations.

232.    As a proximate result of their reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained.

233.    Plaintiff's reasonable reliance on Defendants' misrepresentations was a substantial factor in causing her damages.

234.    Defendants were guilty of malice, fraud or oppression as defined in Civil Code § 3294, and where appropriate Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish defendants.

FIFTH CLAIM
Concealment
California Civil Code §§ 1709-1710
(Plaintiff against all Defendants)

235.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 234, inclusive, as if fully set forth herein verbatim.

236.    Defendants concealed, certain material facts from Plaintiff who was not aware of them including, but not limited to the following:

    a.  The actual monthly mortgage obligation for the Tobago Ave. Property;

    b.  The actual sales price of the Tobago Ave. Property;

    c.  That Plaintiff was not qualified to borrow enough money to purchase the Tobago Ave. property;

    d.  That Defendant Patricia Alvarez was not authorized as a real estate agent by the DRE to act as Plaintiff's agent in negotiation the sale price terms and financing terms for the Tobago Ave. Property;

- 33 -

    e.   That Plaintiff's loan obligations based on the documents that she had signed on or around January 11, 2007 were not relied upon to finance the Tobago Ave. Property and that instead the Countrywide loan obligations were based on the March 27, 2007 – loan documents not signed by Plaintiff;

    f.   That the funds of $2,776 that Plaintiff submitted to Defendant Closing Company on or about March 10, 2007 to be used toward mortgage payments but were applied without my knowledge or consent to the closing costs associated with the loans fraudulently obtained on or about March 27, 2007;

    g.   That in May of 2007 that Defendants would execute or cause to have executed a Grant Deed transferring an interest in the property to defendant Maria Rodriguez, a party unknown to Plaintiff;

    h.   That using her actual monthly income and assets, Plaintiff did not qualify to borrow enough money to enter into an agreement to purchase the Tobago Ave. property;

    i.   That Plaintiff's loan application was falsified;

    j.   That Plaintiff was not obligated to proceed with the Tobago Ave. Property transaction because the loans extended by Countrywide were based upon false and forged loan documents;

237.    Defendants were under a duty to disclose important and material facts to Plaintiff because of their fiduciary relationship to Plaintiff and/or duty of fair dealing under contracts entered into with Plaintiff.

238.    Defendants concealed or suppressed the facts with the intent to defraud Plaintiff.

239.    Plaintiff was unaware of these facts and reasonably relied on defendants' deception in proceeding with the Tobago Ave. property transaction. As a proximate result, Plaintiff has been damaged in an amount to be determined at trial but not yet ascertained.

- 34 -

240.    Defendants' concealment was a substantial factor in causing Plaintiff to sustain damages.

241.    Defendants were guilty of malice, fraud or oppression as defined in Civil Code § 3294, and where appropriate plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish defendants.

SIXTH CLAIM
Negligent Misrepresentation
California Civil Code §§ 1709-1710
(Plaintiff against all Defendants)

242.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 241, inclusive, as if fully set forth herein verbatim.

243.    Defendants falsely represented to Plaintiff, inter alia, that the following important facts were true:

   a.    That the monthly mortgage obligation on the Tobago Ave. Property would have a fixed rate of interest at 1%, and that the loan's prepayment penalty would not apply if the Plaintiff sold the Tobago Ave. Property;

   b.    That the true total cost of the property to Plaintiff was based upon loan documents that the Plaintiff signed on or about January 11, 2007;

   c.    That Plaintiff received a full and complete set of documents related to the transactions for the purchase and loan obligations for the Tobago Ave. Property;

   d.    Plaintiff qualified to borrow enough money to purchase the Tobago Ave. Property

   e.    That Plaintiff had consented to a transfer of interest in the Tobago Ave. Property to Defendant Maria Rodriguez on or about May 7, 2007.

244.    Defendants had no reasonable basis for believing that the representations were true when the representation were made.

245.    Defendants intended that Plaintiff rely on the misrepresentations.

246.    Plaintiff reasonably relied on the misrepresentations.

- 35 -

247.    As a proximate result of their reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained.

248.    Plaintiff's reasonable reliance on Defendants' misrepresentations was a substantial factor in causing the damages sustained by Plaintiff.

249.    Defendants were guilty of malice, fraud or oppression as defined in Civil Code § 3294, and where appropriate Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

SEVENTH CLAIM
Breach of Fiduciary Duty
(Plaintiff against Defendants Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias, Mario Burnias, Mariposa, HSC)

250.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 249, inclusive, as if fully set forth herein verbatim.

251.    California law imposes on the real estate agents, as fiduciaries, the same obligation of undivided service and loyalty that it imposes on a trustee in favor of a beneficiary.

252.    Defendants Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias, Mario Burnias, Mariposa, HSC owed Plaintiff fiduciary duties of utmost loyalty, good faith and diligence and breached those duties by, inter alia:

a.    Misleading Plaintiff to believe that Plaintiff could afford a monthly mortgage payment between $2,000 and $2,700;

b.    Misleading Plaintiff into believing that her loan contained a fixed rate of interest and that no prepayment penalty would be incurred if Plaintiff sold her home;

c.    Misleading Plaintiff into believing that the home would appreciate in value and that the sales price recommended by Defendant Patricia Alvarez was reasonable;

- 36 -

d. Misleading Plaintiff into believing that Defendant Patricia Alvarez was an authorized real estate agent licensed by the California State Department of Real Estate;

e. Failing to disclose what Plaintiff is informed and believes to be a personal and/or familial relationship between Defendants Alejandra Andrade and Enrique Amezcua – who owned an interest in the Tobago Ave. Property – and Defendants Patricia Alvarez and Gloria Alvarez – who acted as agents in the real estate sales transaction for the Tobago Ave. Property;

f. Failing to explain the terms of the January 11, 2007 loan transaction to Plaintiff;

g. Inducing Plaintiff to sign loan documents on or about January 11, 2007 by either misrepresenting the terms or failing to disclose the terms;

h. Failing to disclose all charges incurred in connection with the purchase of the Tobago Ave. Property; and

i. Aiding Defendant Maria Rodriguez to fraudulently record an interest in the Tobago Ave. Property on or about May 7, 2007 without the consent or authorization of Plaintiff.

253.    Defendants Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias, Mario Burnias, Mariposa, and HSC engaged in the conduct alleged herein for the purpose of advancing their own financial interest and in callous disregard of the foreseeable financial consequences to Plaintiff.

254.    Defendants Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias, Mario Burnias, Mariposa, and HSC failed to act diligently by failing to evaluate Plaintiff's ability to repay the Countrywide loans, failing to disclose all material terms of the transaction, and failing to comply with applicable consumer protections intended to benefit Plaintiff.

255.    As a result of Defendants' breach of their fiduciary duties to Plaintiff, Plaintiff has sustained damages to be proven at trial but not yet ascertained.

256.     Defendants' conduct as alleged herein was a substantial factor in causing the

damages sustained by Plaintiff.

EIGTH CLAIM
Negligence
(Plaintiff against Defendant Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias,
Mario Burnias, Mariposa, and HSC)

257.     Plaintiff hereby incorporates by reference the allegations of paragraphs 1

through 256, inclusive, as if fully set forth herein verbatim

258.     Because a real estate agent is required to exercise reasonable care and

diligence in any transaction and is bound to exercise his or her skill for the benefit of

the principal, the agent is liable for any damages suffered by the principal as a result of

any negligence in the performance of his or her agency duties.

259.     Defendants Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias, Mario

Burnias, Mariposa, and HSC owed Plaintiff a duty to act as reasonably prudent real

estate agents, mortgage loan brokers, and mortgage loan lenders.

260.     A reasonably prudent real estate agent, mortgage loan broker and mortgage

loan lender would not have directed Plaintiff to Countrywide products nor originated

such loans.

261.     Defendants Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias, Mario

Burnias, Mariposa, and HSC acted negligently in failing to properly consider,

investigate, evaluate or audit Plaintiff's loan application and/or ability to repay the

loans made.

262.     Plaintiff is informed and believes that Defendants Gloria Alvarez, Pho,

McCain, Vision Quest, Eddie Burnias, Mario Burnias, Mariposa, and HSC also failed

to consider the usual underwriting factors for assessing Plaintiff's creditworthiness.

263.     Defendants Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias, Mario

Burnias, Mariposa, and HSC knew or should have known to utilize the best practices

for underwriting, originating, and issuing loans when recommending the Countrywide

loans to Plaintiff, but negligently failed to do so.

- 38 -

264.    By their conduct as alleged herein, Defendants Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias, Mario Burnias, Mariposa, and HSC were the proximate cause of damages sustained by Plaintiff in an amount to be proven at trail but not yet ascertained.

### NINTH CLAIM
Notary Malfeasance
California Government Code § 8214
(Plaintiff against Defendant E. Salazar and Does I – 50)

265.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 264, inclusive, as if fully set forth herein verbatim.

266.    Defendant E. Salazar intentionally and fraudulently misrepresented that Plaintiff appeared before her and allowed her to notarize loan documents and Deeds of Trust on or about March 27, 2007, that were submitted to Countrywide, and a Grant Deed that transferred an interest in the Tobago Ave. Property to Defendant Maria Rodriguez, on or about May 7, 2007, even though Defendant E. Salazar knew that the signatures on these documents were not Plaintiff's.

267.    These Deeds of Trust and Grant Deed were subsequently recorded and thereupon divested Plaintiff of her undivided interest in the Tobago Ave. Property.

268.    California Government Code § 8206 requires that during the notarization process a notary public obtain the thumbprint of the signatory to any instrument to be notarized when such instrument affects title to real property.

269.    Plaintiff has never appeared before Defendant E. Salazar.

270.    Plaintiff has never entered her thumb print into Defendant E. Salazar's notary journal for Deeds of Trust and Grant Deed that were recorded with the Santa Clara County Recorder's Office and that bear Defendant E. Salazar's notary stamp.

271.    Defendant E. Salazar engaged in official misconduct or neglect when she notarized documents that contained Plaintiff's forged signature.

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

272.       Defendant E. Salazar violated California Government Code §§ 8207, 8211 and 8224.1 and is therefore is liable to Plaintiff under California Government Code § 8214.

273.       As a proximate result of Defendant E. Salazar's malfeasance as alleged herein, Plaintiff has suffered damages in an amount to be proven at trial but not yet ascertained.

TENTH CLAIM

Violation of California Civil Code § 1632

(Plaintiff against Defendants Patricia Alvarez, Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias, Mario Burnias, Mariposa, HSC, Alejandra Andrade, and Countrywide)

274.       Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 273, inclusive, as if fully set forth herein verbatim.

275.       Defendants Patricia Alvarez, Gloria Alvarez, Pho, McCain, Vision Quest, Eddie Burnias, Mario Burnias, Mariposa, HSC, Alejandra Andrade, and Countrywide failed to provide any real estate representation; real estate purchase; and real estate loan documentation in the Spanish language despite the fact that these transactions were negotiated in Spanish.

276.       Pursuant to subdivision (k) of California Civil Code § 1632,

277.       Defendant Countrywide must rescind such loans;

278.       Pursuant to subdivision (k) of California Civil Code § 1632, Defendant Alejandra Andrade must rescind such a purchase contract;

279.       Pursuant to California Civil Code § 1691(b), this complaint serves as notice of this rescission.

280.       Plaintiff is entitled to rescind the Countrywide loans related to the purchase of the Tobago Ave. Property and is entitled to equitable restitution.

//

//

//

- 40 -

ELEVENTH CLAIM
Rescission/Cancellation
California Civil Code § 1689 and Court's Inherent Equitable Authority
(Plaintiff against all Defendants)

281.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1

through 280, inclusive, as if fully set forth herein verbatim.

282.    Plaintiff's purported signature of loan documents on or about March 27, 2007

were the result of fraud, duress and undue influence.

283.    Plaintiff negotiated the sale of the Tobago Ave. Property in Spanish but all

documents related to the purchase of the property were printed in English.

284.    Plaintiff never received a copy of the documents related to the purchase of the

Tobago Ave. Property.

285.    The terms of the loans made by Defendant Countrywide to finance the

purchase of the Tobago Ave. Property, with initial balances of $476,000 and $59,500,

were never explained to Plaintiff.

286.    The documents that Plaintiff signed on or about January 11, 2007 were all

printed in English and not translated into Spanish, even though all transactions had

occurred in Spanish.

287.    Plaintiff never signed any of the loan notes or Deeds of Trust dated on or about

March 27, 2007 - on which the loans to finance the Tobago Ave Property are based -

and that contain the following unconscionable terms:  a teaser introductory rate of 1%

that would increase within one month of the commencement of the loan term; a loan

with interest-only minimum payments that is a negative amortization loan; and a two

year prepayment penalty.

288.    Plaintiff received no bargained-for exchange of consideration for the loans

made by Defendant Countrywide, since Plaintiff did not sign the loan documents on

which these loans are based.

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

289.     Plaintiff is entitled to rescission and/or cancellation of the purchase and the mortgage loan (with an initial balance of $476,000) and the HELOC (with the initial balance of $59,500) that encumber the Tobago Ave. Property, inter alia, pursuant to California Civil Code § 1689.

## TWELVTH CLAIM
### Civil Conspiracy to Defraud
(Plaintiff against All Defendants)

290.     Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 289, inclusive, and the allegations in all of the other claims alleged in this complaint, as if fully set forth herein verbatim.

291.     Defendants, by their actions, engaged in a civil conspiracy to fraudulently induce Plaintiff to enter into real property purchase and loan transactions.

292.     Defendants entered into an agreement (either explicitly or tacitly) to fraudulently induce Plaintiff to enter into and be bound by purchase and loan transaction by intentionally making misrepresentations and concealing material facts as described above.  All of the Defendants' acts were directed toward the goal of the conspiracy.

293.     Each defendant stood to gain from this conspiracy, through fees and commissions, referral of business, and interest on Plaintiff's loans.

294.     On information and belief, no Defendant took any steps to withdraw from the conspiracy and therefore all Defendants are liable for the actions of the others in effecting the conspiracy.

295.     Plaintiff was injured by the actions taken in furtherance of the conspiracy and are therefore entitled to damages.

## THIRTEENTH CLAIM
### Negligent Supervision
(Plaintiff against Defendants Vision Quest, Pho, McCain, Mariposa, McCain, Gloria Alvarez, HSC, Eddie Burnias, and Mario Burnias)

296.     Plaintiff hereby incorporates by reference the allegations of paragraphs 1

– 42 –

through 295, inclusive, and the allegations in all of the other claims alleged in this complaint, as if fully set forth herein verbatim.

297.    Because a broker is required to exercise reasonable care and diligence in supervising his or her employees and agents in any transaction and is bound to exercise his or her skill of the benefit of the principal, the broker is liable for any damages suffered by the principal as a result of any negligence in the performance of his or her agency duties.

298.    Defendants owned Plaintiff a duty to act as reasonably prudent supervisors of their employees and agents in their roles as real estate and mortgage brokers.

299.    A reasonably prudent supervising real estate and mortgage broker and supervising mortgage loan lender would not have directed plaintiff to the loans obtained, would not have originated such loans, and would not have allowed his or her employees or agents to provide or originate such loans.

300.    Defendants Vision Quest, Pho, McCain, Mariposa, Gloria Alvarez, HSC, Eddie Burnias, and Mario Burnias acted negligently in failing to properly supervise all work regarding Plaintiff's real estate contracts, including but not limited to offers and purchase agreement contracts; loan applications, loan documentation, and loan origination for the Tobago Ave. Property.

301.    Defendants Vision Quest, Pho, McCain, Mariposa, Gloria Alvarez, HSC, Eddie Burnias, and Mario Burnias knew or should have known to utilize reasonably prudent practices for supervising the purchase and loan-making process, but negligently failed to do so, by in particular, allowing Defendant Patricia Alvarez to serve as a real estate sales and loan brokerage agent to Plaintiff.

302.    By their conduct as alleged herein, Defendants Vision Quest, Pho, McCain, Mariposa, Gloria Alvarez, HSC, Eddie Burnias, and Mario Burnias were the proximate cause of damages sustained by Plaintiff in an amount to be proven at trial but not yet ascertained.

RELIEF

Wherefore, Plaintiff prays for the following relief:

303.    That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. § 1367;

304.    That the Court declare that Defendants violated applicable provisions of federal and state law;

305.    That the Court enjoin all unlawful practices complained of in this action and impose affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to immediately implement policies designed to ensure: (1) that all prospective borrowers' loan applications do not contain false information, (2) a thorough evaluation of all prospective borrowers' ability to repay any loans made available to them, (3) training regarding applicable lending laws for all of defendants' employees and agents, (4) translate disclosure documents into Spanish if negotiated in Spanish and (5) eliminating discriminatory policies and practices;

306.    That the Court provide declaratory relief hat Defendants immediately rescind the purchase and loan contracts related to the Tobago Ave. Property as described in this complaint and return all costs to Plaintiff associated with purchase and loan transactions;

307.    That the Court award compensatory and punitive damages, where appropriate, to Plaintiff according to proof;

308.    That the Court award Plaintiff's costs of suit, including reasonable attorney's fees; and

309.    That the Court award Plaintiff's all other relief as the Court deems just.

This document has been translated for me from English to Spanish.

Dated: March 26, 2008

By:    Patricia M. Hernandez
       Plaintiff

– 44 –

COMPLAINT FOR RESCISSION, DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

JS 44 (Rev. 12/07)(cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Patricia M. Hernandez

### DEFENDANTS

See Attachment A



**(b)** County of Residence of First Listed Plaintiff   Santa Clara County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Santa Clara County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

In Pro Per

Attorneys (If Known)

# C08  01630 PVT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☒ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Real Estate and Settlement Procedures Act, 12 U.S.C. 2601 et seq (RESPA), Truth in Lending Act, 15 U.S.C. 1601 et seq.

Brief description of cause:
Rescission and Defendants' imposition and collection of illegal fees and kickbacks

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☐ SAN FRANCISCO/OAKLAND   ☒ SAN JOSE

DATE  3-26-08

SIGNATURE OF ATTORNEY OF RECORD   *Patricia M. Hernandez*

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.      (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
        Brief Description: Unauthorized reception of cable service

**VII.   Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

ATTACHMENT A

Patricia Alvarez, Gloria Alvarez, Bic D. Pho, David McCain, Vision Quest 21, Inc.,
Eddie Burnias, Mario Burnias, Mariposa Mortgage, Inc., Hilton Stanley Capital, Joanne
Wong, Michael Andin, Countrywide Bank, FSB, Deanna Glover, Maria Antunes, The
Closing Company-Escrow Service, Maria Rodriguez, E. Salazar, Darrell Kettner,
Aequitas Appraisal Group, Alejandra Andrade, Enrique Amezcua; and DOES I to 50,
inclusive.

    DEFENDANTS