1  EMMETT C. STANTON (CSB NO. 83930)
   e-mail: estanton@fenwick.com
2  CATHLEEN DONOHOE (CSB NO. 228729)
   e-mail: cdonohoe@fenwick.com
3  CHRISTOPHER WALTON (CSB NO. 240070)
   e-mail: cwalton@fenwick.com
4  GUINEVERE JOBSON (CSB NO. 251907)
   e-mail: gjobson@fenwick.com
5  FENWICK & WEST LLP
   Silicon Valley Center
6  801 California Street
   Mountain View, CA 94041
7  Phone: (650) 988-8500; Fax: (650) 938-5200

8

9  ANNETTE KIRKHAM (CSB NO.217958)
   e-mail: annettek@lawfoundation.org
10 LAW FOUNDATION OF SILICON VALLEY
   FAIR HOUSING LAW PROJECT
11 111 W. St. John Street, Suite #315
   San Jose, CA 95113
12 Phone: (408) 280 2401; Fax: (408) 293-0106

13 Attorneys for Plaintiff
   PATRICIA M. HERNANDEZ
14

15                   UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                         SAN JOSE DIVISION

18 PATRICIA M. HERNANDEZ,              Case No.  C08-01630 - PVT

19               Plaintiff,            **FIRST AMENDED COMPLAINT
                                       FOR RESCISSION, DAMAGES,
20 v.                                  RESTITUTION, INJUNCTIVE
                                       RELIEF, DECLARATORY
21 PATRICIA ALVAREZ; GLORIA ALVAREZ;   RELIEF; DEMAND FOR JURY
   DAVID MCCAIN; VISION QUEST 21, INC.; TRIAL**
22 COUNTRYWIDE BANK, FSB; MARIPOSA
   MORTGAGE INC.; THE CLOSING COMPANY –
23 ESCROW SERVICE; AEQUITAS APPRAISAL
   GROUP; EDDIE BURNIAS; MARIO BURNIAS;
24 MICHAEL ANDIN; JOANNE WONG; DEANNA
   GLOVER; MARIA ANTUNES; MARIA
25 RODRIGUEZ; ERIKA SALAZAR; DARRELL
   KETTNER; ALEJANDRA ANDRADE; ENRIQUE
26 AMEZCUA; and DOES 1 to 20, inclusive,

27               Defendants.

28

FIRST AMENDED COMPLAINT

Plaintiff Patricia M. Hernandez ("plaintiff" or "Ms. Hernandez") hereby alleges for her complaint against Patricia Alvarez; Gloria Alvarez; David McCain; Vision Quest 21, Inc.; Countrywide Bank, FSB; Mariposa Mortgage Inc.; The Closing Company – Escrow Service; Aequitas Appraisal Group; Eddie Burnias; Mario Burnias; Michel Andin; Joanne Wong; Deanna Glover; Maria Antunes; Maria Rodriguez; Erika Salazar; Darrell Kettner; Alejandra Andrade; Enrique Amezcua and Does 1 thorough 20, inclusive (collectively "defendants"), as follows:

## PREDATORY LENDING

1.      Predatory lending is thought to be one of the causes of the mortgage crisis currently effecting millions of Americans. In fact, in recent comments, Federal Reserve Chairman Ben Bernanke attributed irresponsible lending practices such as those described herein, as one of the originating causes of the current "subprime mortgage turmoil." *Bernanke Remarks on Mortgage Crisis*, WASH. POST, March 14, 2008.

2.      There is no uniformly accepted definition of "predatory lending." However, the United States Department of Housing and Urban Development ("HUD") has defined predatory lending as lending "involving deception or fraud, manipulation of borrowers through aggressive sales tactics, or taking unfair advantage of a borrower's lack of understanding about loan terms." Curbing Predatory Home Mortgage Lending (June 2000), a joint report of the Department of Housing and Urban Development and the Treasury Task Force on Predatory Lending ("HUD Report") at 1. According to HUD, "[t]hese practices are often combined with loan terms that, alone or in combination, are abusive or make the borrower more vulnerable to abusive practices." *Id*.

3.      HUD and the United States General Accounting Office ("GAO") have identified numerous lending practices as predatory. Since predatory lenders are constantly developing new techniques to take advantage of borrowers, any enumeration of predatory practices necessarily will be incomplete. Nevertheless, it is generally accepted by the lending industry and government agencies that monitor that industry that predatory lending practices include: (a) engaging in aggressive, high-pressure and/or misleading sales tactics; (b) lending without regard to the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   borrower's ability to repay; (c) imposing excessive prepayment penalties that trap borrowers into

2   predatory loans; (d) making misrepresentations or otherwise misleading borrowers about loan

3   terms; (e) falsifying loan documents; (f) targeting low-income, elderly and minority borrowers for

4   predatory lending campaigns; (g) charging excessive fees, points and interest rates unrelated to

5   the borrower's credit/risk profile; (h) misleading borrowers about the borrower's credit/risk

6   profile to steer borrowers to a higher-cost loan that is not justified by the borrower's true profile;

7   and (i) causing borrowers to refinance loans multiple times over a short period of time without

8   any economic gain to the borrowers. HUD Report at 2; Federal and State Agencies Face

9   Challenges in Combating Predatory Lending (January 2004), a report by the United States

10  General Accounting Office ("GAO Report") at 3-4, 18-19. These and similar practices,

11  individually and collectively, are referred to herein as "predatory lending" practices.

12      4.      Predatory lenders use prepayment penalties as a means to trap borrowers into loans

13  with onerous terms. GAO Report at 19. Borrowers cannot refinance and escape those onerous

14  terms without incurring thousands of dollars in new fees or paying prepayment penalties, further

15  stripping the equity from their homes.

16      5.      The practice of specifically targeting and aggressively soliciting protected class

17  members, such as racial/ethnic minority populations, for predatory loan products is known as

18  "reverse redlining." HUD Report at 72.

19      6.      Predatory lenders frequently deceive borrowers and engage in outright fraud

20  through practices such as falsifying loan applications and settlement documents and forging

21  signatures. GAO Report at 19. They also promise borrowers that if they accept a loan with a

22  high interest rate, they can refinance for a lower interest rate after a short period at no cost.

23      7.      Another common predatory lending practice involves inflating property appraisals.

24  When predatory lenders arrange or accept inflated appraisals, they induce borrowers to take on

25  loans that exceed the value of their homes. This traps the borrower into predatory loans and

26  prevents them from selling their homes to pay off the mortgage loans because they cannot afford

27  the large cash payment required to satisfy the deficiency between the sale price and the principal

28  balance. This practice benefits predatory lenders by allowing them to collect closing costs on

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    loans that otherwise should not have been made and by trapping borrowers into high interest rate

2    loans that cannot be refinanced due to the lack of equity.

3        8.        Low-income minorities and the elderly are the primary victims of predatory

4    lending practices.  Predatory lenders prey on low-income minority borrowers, particularly those

5    who may not speak or read English, have little education, are financially unsophisticated and/or

6    lack access to mainstream financial outlets.  HUD Report at 22; GAO Report at 25.  Predatory

7    lending practices often lead homeowners into a cycle of refinancing, foreclosure, economic

8    ruination and segregation from conventional credit sources.  HUD Report at 74.  On a larger

9    scale, when predatory lending practices are concentrated in specific areas—as they frequently

10   are—communities suffer from destabilization through the loss of equity, distressed and vacant

11   properties, and stifled economic development.  GAO Report at 20.  This causes a depression in

12   property values and requires entire neighborhoods to pay the price for the wrongful practices of

13   unscrupulous lenders.

14                                    **INTRODUCTION**

15       9.        Defendants in this action preyed upon plaintiff through a series of predatory and

16   abusive lending practices.

17       10.       Plaintiff speaks, understands, and reads very little English and relies on her

18   primary language of Spanish when conducting personal transactions.

19       11.       In October 2006, plaintiff decided that she wanted to purchase a home instead of

20   continuing to rent her apartment.  At the time, plaintiff took home approximately $1,500 per

21   month from her job and received an additional $500 per month in child support from her ex-

22   husband to support their children.

23       12.       In October 2006, plaintiff responded to a newspaper advertisement for real estate

24   services offered by defendant Gloria Alvarez, an agent for Century 21 Su Casa Realty ("Century

25   21 Su Casa").

26       13.       Plaintiff attempted to contact Gloria Alvarez at Century 21 Su Casa and was

27   directed to speak with defendant Patricia Alvarez instead.  After discussing plaintiff's financial

28   situation and how much plaintiff believed she could afford in monthly mortgage payments,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Patricia Alvarez showed plaintiff a home on Tobago Avenue in Santa Clara County (the "Tobago

2    Avenue property") that she claimed was not yet available on the market. Patricia Alvarez

3    represented to plaintiff that she could serve as plaintiff's agent. However, plaintiff is now

4    informed and believes, and on that basis alleges, that Patricia Alvarez was never licensed in

5    California as a real estate agent.

6        14.    Based on Patricia Alvarez's recommendation, plaintiff authorized her to offer

7    $470,000 for the Tobago Avenue property.

8        15.    Shortly thereafter, Patricia Alvarez advised plaintiff that her offer had been

9    accepted. It was not until plaintiff later met with Patricia Alvarez that she informed plaintiff that

10   she had actually raised the offer price because the seller, who was also represented by Patricia

11   Alvarez, had purportedly demanded more money.

12       16.    Plaintiff never authorized Patricia Alvarez to raise plaintiff's offer beyond

13   $470,000, and was never informed by Patricia Alvarez that she had the right to cancel the

14   agreement to purchase the Tobago Avenue property.

15       17.    Plaintiff is informed and believes, and on that basis alleges, that defendants Gloria

16   and Patricia Alvarez have a close familial and/or personal relationship with the seller of the

17   Tobago Avenue property.

18       18.    On or about January 11, 2007, plaintiff met with defendant Patricia Alvarez and a

19   notary public at the Century 21 Su Casa office to sign what plaintiff understood to be the loan

20   documents for the Tobago Avenue property. At all relevant times during this meeting, plaintiff

21   spoke to all parties in Spanish. However, all of the loan documents presented for plaintiff's

22   signature were printed in English. No Spanish language translation was provided to plaintiff.

23       19.    Plaintiff was not given copies of any of the documents she signed until

24   approximately two weeks later. However, even then, plaintiff was not provided with critical loan

25   documentation, including a statutorily required Good Faith Estimate or HUD-1 Settlement

26   Statement.

27   ///

28   ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

20. Later that month, plaintiff was informed by Patricia Alvarez that she was the owner of the Tobago Avenue property. At that time, Patricia Alvarez also gave plaintiff keys to the property. Plaintiff moved into the Tobago Avenue property in early February 2007.

21. It was not until the following year, as a result of discussions with her attorneys in early 2008, that plaintiff learned that her home loans were based not on the loan papers she actually signed in January 2007, but instead on loan documents dated March 27, 2007.

22. Plaintiff did not meet with defendants, nor did she sign any loan documents in March 2007. Plaintiff is informed and believes, and on that basis alleges, that certain of the defendants forged her signatures in the March 2007 loan application papers. Those forged loan papers bear a fake signature of plaintiff, and contain several false or misleading representations regarding plaintiff's assets, income, and employment history. Those misrepresentations include the following:

a.     That plaintiff's gross monthly income was $13,950 (in reality, her gross monthly income between October and December 2006 was approximately $2,200);

b.     That plaintiff worked as a Senior Marketing Director for Universal Management (in reality, plaintiff worked as a porter and has no knowledge of a company called Universal Management); and

c.     That plaintiff had a net worth of $95,387 and $68,000 in a savings account (in October 2006, plaintiff had a net worth nowhere near that amount, less than $2,000 in checking and savings accounts).

23. Based on the forged loan documents, plaintiff received two loans from defendant Countrywide Bank. The first loan was issued in the amount of $476,000, with an adjustable interest rate that reached a maximum rate of interest of 9.950%. The present monthly payment is $1,531.00. This monthly payment is only the minimum required payment, and does not include any principal, or even the full amount of interest that accrues on the loan each month. As such, interest compounds on the loan every month. The present mortgage balance is $485,988.47 with a reported $12,942.14 in outstanding mortgage payments, penalties and fees.

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

24.    The second loan, a Home Equity Line of Credit ("HELOC"), was issued in the amount of $59,500, with a variable interest rate that is currently 6.750%, and a monthly finance charge of $329.20. The present loan balance is $59,500, and with outstanding payments, fees, and costs, the total amount due is $63,420.93.

25.    In May or June of 2007, plaintiff was surprised and alarmed to receive a copy of a second grant deed concerning the Tobago Avenue property. This second grant deed falsely stated that plaintiff had granted a 1% interest in the Tobago Avenue property to a woman named Maria Rodriguez as Tenants In Common on May 7, 2007. Until that day, plaintiff had never met or even heard of Rodriguez, and she did not grant any interest in her property to Rodriguez.

26.    The second grant deed falsely stated that plaintiff had appeared before notary Erika Salazar ("Salazar") on May 7, 2007, and bears a fake signature of plaintiff. In short, defendants forged a second grant deed that purports to transfer an interest in Ms. Hernandez's home to a stranger for some unknown reason.

27.    In late January 2008, plaintiff received a copy of her final loan settlement statement after requesting a copy of such documents from Countrywide. Upon reviewing the final settlement statement with an interpreter in March 2008, plaintiff was shocked to see that it stated that the purchase price of her home was $595,000, significantly higher than the purchase price she thought she was paying for the home. Plaintiff was also shocked and confused to find that it falsely stated that she had contributed $54,000 in closing funds in the transaction to acquire the Tobago Avenue property. In fact, she had contributed nowhere near that amount.

28.    When plaintiff reviewed the final HUD-1 settlement statement, she was surprised to find that the closing fees for her loan were *over $28,000*. Plaintiff also learned that she was charged *nearly $6,000 in fees* for her equity line of credit loan, although those fees were not disclosed in the HUD-1 settlement statement or reflected in plaintiff's TILA Disclosure Statement.

29.    As a result of defendants' fraudulent and deceptive acts, plaintiff is now mired in hundreds of thousands of dollars in debt from loans and unearned fees and charges based on loan

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   documents forged by the defendants.  Plaintiff faces imminent foreclosure, loss of her family

2   home, and a negative impact on her credit rating that will affect her for years to come.

3         30.    Had defendants not forged the documents identified in this complaint, and

4   included false representations regarding her income and assets in those documents, plaintiff is

5   informed and believes, and on that basis alleges, that she never would have been granted the loans

6   that now encumber the Tobago Avenue property.  Indeed, the amount of the ***minimum*** monthly

7   payments on those loans, which does not even cover current interest charges, ***exceeds plaintiff's***

8   ***total take home pay, including the support payments she receives to provide for her children***.

9         31.    Plaintiff is not the first person to be victimized by defendants' fraudulent scheme.

10  On June 28, 2008, the San Jose Mercury News reported that defendant Gloria Alvarez was

11  arrested and faces eleven felony counts, including grand theft, arising from an alleged scheme

12  virtually identical to the one employed by defendants in this case – selling Santa Clara County

13  residents homes that they could not afford, and secretly falsifying borrowers' loan applications.

14  The Santa Clara County District Attorney has stated that defendant Gloria Alvarez "has been the

15  subject of more complaints to the Santa Clara District Attorney's Office Real Estate Fraud Unit

16  than any other individual real estate agent."

17        32.    On June 2, 2008, the California Department of Real Estate filed a First Amended

18  Accusation (the "Accusation") against several of the defendants and individuals in this case,

19  including Mariposa Mortgage, Inc., Vision Question 21, Inc., Bic Pho, Gloria Alvarez, and Eddie

20  Burnias.  The Accusation alleges that the defendants in that action engaged in fraudulent schemes

21  to induce mortgage lenders to issue loans to individuals by misrepresenting the borrowers'

22  qualifications, including falsely overstating borrowers' monthly income, falsely stating that

23  borrowers had already paid significant sums of money towards the purchase of their homes, and

24  falsely representing at least one borrower's occupation.

25        33.    This is not the first time defendant Countrywide has been accused of engaging in

26  predatory and unfair lending practices.  Countrywide has been named as a defendant in lawsuits

27  accusing it of racial and ethnic discrimination in lending, predatory lending to an elderly person,

28  using bait and switch tactics, unfair use of prepayment penalties among others.  Furthermore,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  Countrywide was named as co-defendant along with non-defendant Bic Pho, in a previous lawsuit

2  claiming violations of TILA.  Additionally, on June 25, 2008 the California Attorney General

3  sued Countrywide Financial Corp alleging their use of misleading advertising and other unfair

4  business practices to trick borrowers into taking on risky home loans they didn't understand and

5  could not afford.

6      34.    Defendants have taken advantage of plaintiff's lack of English literacy and

7  financial sophistication to bury her in mortgages on a property that was worth nowhere near the

8  price plaintiff paid.  Plaintiff never could have qualified to purchase the Tobago Avenue property

9  if defendants had not misrepresented her financial condition in her loan application.  Defendants

10  made numerous misrepresentations to plaintiff, made false statements without her knowledge in

11  her loan application and forged documents including a second set of loan documents that plaintiff

12  never saw, and a grant deed giving an interest in plaintiff's property to an unknown party.  As a

13  reward for their fraudulent acts, inadequate services and breaches of fiduciary duties, defendants

14  took for themselves entirely unreasonable and outrageous fees and costs totaling *almost 5% of

15  the purchase price of the property*, fees and costs that were not disclosed to plaintiff as required

16  by law.  Defendants' greed and utter disregard for plaintiff or her ability to pay for the loan, set up

17  plaintiff for the almost inevitable loss of her home through foreclosure and the devastating

18  financial implications that would result from foreclosure.

19      35.    Plaintiff seeks rescission of the predatory loans in which she is trapped, equitable

20  relief, and monetary damages, as further detailed below.

21                      **JURISDICTION AND VENUE**

22      36.    This is an action for violations of 15 U.S.C. § 1601 *et seq*. (the Truth in Lending

23  Act, "TILA"), 12 U.S.C. § 2601 *et seq*. (the Real Estate Settlement and Procedures Act,

24  "RESPA") and related state laws.  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.

25  section 1331 in that the claims alleged herein arise under the laws of the United States.  This

26  Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine

27  plaintiff's state law claims because those claims are related to plaintiff's federal claims and arise

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    out of a common nucleus of related facts and form part of the same case or controversy under

2    Article III of the United States Constitution.

3         37.    This Court has jurisdiction over plaintiff's action for declaratory relief pursuant to

4    28 U.S.C. section 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is

5    authorized by 28 U.S.C. section 2203 and Rule 65 of the Federal Rules of Civil Procedure.

6         38.    This Court has personal jurisdiction over the defendants named herein because a

7    substantial portion of the wrongdoing alleged in this complaint took place in the Northern District

8    of California, defendants' principal place of business is in California, and/or defendants are

9    authorized to and regularly do business in the Northern District of California, including Santa

10   Clara County.

11        39.    Venue is proper in this judicial district pursuant to 28 U.S.C. section 1391(b)

12   because a substantial portion of the events and omissions giving rise to this complaint occurred

13   within the Northern District of California. The loan contracts between plaintiff and defendants, to

14   the extent there were any valid loan contracts, were made and were/are to be performed, and the

15   obligations arose, in the Northern District of California.

16                              **INTRADISTRICT ASSIGNMENT**

17        40.    Intradistrict assignment in San Jose, California is proper because the unlawful

18   conduct that gives rise to the alleged claims occurred in Santa Clara County.

19                                      **THE PARTIES**

20        41.    Plaintiff Patricia Hernandez is a natural person of Hispanic descent who traces her

21   national origin to Mexico. At all relevant times alleged in this complaint, plaintiff was over the

22   age of 18, a legal resident, and a resident of Santa Clara County. Plaintiff speaks, understands,

23   and reads very little English and relies on her primary language of Spanish when conducting

24   personal transactions. Accordingly, all communications alleged in this complaint occurred in the

25   Spanish language, except where specifically alleged otherwise.

26        42.    Defendant Patricia Alvarez is a natural person over the age of 18, who on

27   information and belief is not currently, nor ever was, licensed as a real estate agent by the

28   California Department of Real Estate ("DRE"). Patricia Alvarez was or is an employee and/or

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  agent of defendant Vision Quest 21, Inc., and all of the entities under which it does business,

2  including Century 21 Su Casa.

3       43.    Plaintiff is informed and believes, and on that basis alleges, that defendant Patricia

4  Alvarez acted as an agent and/or employee of defendants Gloria Alvarez, Mariposa Mortgage,

5  Eddie Burnias, and Mario Burnias in conducting real estate transactions and/or making loans to

6  finance the purchase of properties located in Santa Clara County.

7       44.    Defendant Gloria Alvarez is a natural person over the age of 18, licensed as a real

8  estate agent by the DRE, and was or is an employee and agent of defendant Vision Quest 21, Inc.

9  and all of the companies under which it does business, including Century 21 Su Casa.

10       45.    Plaintiff is informed and believes, and on that basis alleges, that defendant Gloria

11  Alvarez acted as an agent and/or employee of defendants Mariposa Mortgage, Eddie Burnias, and

12  Mario Burnias in making loans to finance the purchase of properties located in Santa Clara

13  County.

14       46.    Bic D. Pho, also known as Bick D. Pho ("Pho"), is a natural person over the age of

15  18 and was or is licensed as a real estate broker by the DRE. Pho was or is the Designated

16  Officer for defendant Vision Quest 21, Inc., was or is an officer of defendant Mariposa Mortgage,

17  Inc., and has or had an ownership interest in the defendant corporation The Closing Company -

18  Escrow Services ("The Closing Company"). This action is not brought against Pho pursuant to

19  the automatic stay provisions of the Bankruptcy Code. 11 U.S.C. 362.

20       47.    Defendant David McCain ("McCain") was and is licensed as a broker by the DRE;

21  was or is an Officer of defendant Vision Quest 21, Inc.; did or does have an ownership interest in

22  defendant corporation Vision Quest 21, Inc., and did or does business in Santa Clara County.

23       48.    Defendant Vision Quest 21, Inc. ("Vision Quest") was and is a corporation

24  organized and existing under the laws of the State of California and did or does business as

25  Century 21 Su Casa, Su Casa Realty, Aborn Prestige Homes & Estates, Aborn Prestige

26  Properties, Century 21 Ruby, Century 21 Fine Homes & Estates, Ruby Prestige Homes & Estates,

27  and Ruby Prestige Properties in Santa Clara County.

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

49.    Defendant Vision Quest was and is licensed by the DRE as a real estate broker by designating an officer who held or holds a valid real estate broker's license.

50.    Defendant Vision Quest's business activity within Santa Clara County included the brokerage of real estate and representation of parties in residential real estate transactions, as well as soliciting and negotiating loans secured by liens on real property.

51.    Defendant Mariposa Mortgage, Inc. ("Mariposa") was and is a corporation organized and existing under the laws of the State of California.

52.    Defendant Mariposa was licensed by the DRE as a real estate broker by designating an officer who held or holds a valid real estate broker's license. Defendant Mariposa's present designated officer is Mario Burnias. Pho is the former Designated Officer of Mariposa, and is or was an Officer of Mariposa.

53.    Defendant Mariposa's business activity within the County of Santa Clara included or includes the brokerage of residential real estate mortgage loans and representation of borrowers in residential real estate transactions.

54.    Defendant Mario Burnias is a natural person over the age of 18, is a licensed real estate broker by the DRE, was or is an employee and loan agent for Mariposa, and regularly conducted or conducts business activity in Santa Clara County and with Santa Clara County residents.

55.    Defendant Eddie Burnias was or is an employee and loan agent for Mariposa; was or is an employee agent for Vision Quest, and regularly conducted or conducts business activity in Santa Clara County with Santa Clara County residents.

56.    Defendant Michael Andin ("Andin") was or is an agent and employed by Countrywide Bank FSB and regularly conducted or conducts business activity in Santa Clara County and with Santa Clara County residents.

57.    Defendant Joanne Wong ("Wong") was or is an agent and employed by Countrywide Bank FSB and regularly conducted or conducts business activity in Santa Clara County and with Santa Clara County residents.

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

58.     Defendant Countrywide Bank FSB ("Countrywide") is a Delaware corporation qualified to do business in the State of California as a foreign corporation, and regularly conducts business activity in Santa Clara County, including the acquisition or servicing of loans secured by residential real estate and the origination of sub-prime loans to borrowers in residential real estate and the origination of sub-prime loans to borrowers in residential real estate transactions in Santa Clara County residents.

59.     Plaintiff is informed and believes, and on that basis alleges, that Countrywide made two or more high cost loans, as defined by 15 U.S.C. § 1602(a), in the 12 months preceding the issuance of loans that encumber the residential property at Tobago Avenue and that is at issue in this complaint.

60.     Plaintiff is informed and believes, and on that basis alleges, that Countrywide is a creditor that regularly extended credit and extended far more than five residential real estate loans in 2006 and 2007.

61.     Defendant The Closing Company was and is a corporation organized and existing under the laws of the State of California and provided or provides escrow services to borrowers in Santa Clara County.

62.     Plaintiff is informed and believes, and on that basis alleges, that Pho was and is the chief financial officer for The Closing Company.

63.     Defendant Maria ("Antunes") is a natural person over the age of 18, a licensed real estate agent by the DRE, served or serves in the capacities of chief executive officer, president, secretary, employee, and agent of The Closing Company, and regularly conducted or conducts business activity in Santa Clara County and with Santa Clara County residents.

64.     Defendant Antunes was and is an agent or employee of Vision Quest and all companies under which it does business and regularly conducted or conducts business in Santa Clara County.

65.     Defendant Deanna Glover ("Glover") is a natural person over the age of 18 and a resident of Santa Clara County, an employee and agent of The Closing Company and regularly

///

1  conducted or conducts business activity in Santa Clara County and with Santa Clara County

2  residents.

3    66.    Defendant Maria Rodriguez is a natural person over the age of 18 and a resident of

4  Santa Clara County.

5    67.    Defendant Alejandra Andrade ("Andrade") is a natural person over the age of 18, a

6  resident of Santa Clara County, a family member and/or personal friend of Patricia Alvarez and

7  Gloria Alvarez, and an agent or employee of the other defendants in this action.

8    68.    Defendant Enrique Amezcua ("Amezcua") is a natural person over the age of 18, a

9  resident of Santa Clara County, a family member and/or personal friend of Patricia Alvarez and

10  Gloria Alvarez, and an agent or employee of the other defendants in this action.

11    69.    Defendant Salazar was or is a notary public, is licensed by the State of California,

12  and regularly conducted or conducts business in Santa Clara County under Commission Number

13  1677943.

14    70.    Defendant Darrell Kettner ("Kettner") is a natural person over the age of 18, a

15  resident of Santa Clara County, and is or was an appraiser licensed by the California Office of

16  Real Estate Appraisers.  Kettner's license number is 030910.

17    71.    Plaintiff is informed and believes, and on that basis alleges, that Kettner maintains

18  an ownership interest in defendant Aequitas Appraisal Group and regularly conducts or

19  conducted business in his own name and on behalf of Aequitas Appraisal Group in Santa Clara

20  County.

21    72.    At all relevant times alleged herein, all of the defendants were agents, servants,

22  and/or employees of each other and were acting within the scope of such agency or employment

23  while engaged in the acts, omissions and other conduct alleged in this complaint, or the alleged

24  acts, omissions and other conduct of each defendant were subsequently ratified or adopted by the

25  other defendants.

26  ///

27  ///

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# FACTUAL ALLEGATIONS

## The Real Estate Purchase Transaction

73.     Plaintiff is a divorced woman and mother of three, including one minor.

74.     Plaintiff traces her national origin to Mexico and her primary language is Spanish. Ms. Hernandez speaks, understands and reads some English, but relies on her primary language of Spanish to communicate and conduct business transactions.

75.     Ms. Hernandez currently resides at 1980 Tobago Avenue, San Jose, CA (the "Tobago Avenue property" at issue in this action).

76.     In October of 2006, Ms. Hernandez noticed an advertisement in a Spanish-language newspaper, El Aguila, for real estate services offered by defendant Gloria Alvarez.

77.     The advertisement stated that defendant Gloria Alvarez was employed by Century 21 Su Casa as a real estate agent, that she was a realtor, that she spoke Spanish and that she was willing to assist people in purchasing homes.  The large advertisement led plaintiff to believe that Gloria Alvarez, as a Century 21 agent, was serious and trustworthy.

78.     In October of 2006, Ms. Hernandez contacted the Century 21 Su Casa office, located at 996 S. King Road in San Jose, ("Century 21 Su Casa office") and asked to speak with defendant Gloria Alvarez.

79.     Instead of speaking with Gloria Alvarez, Ms. Hernandez was directed to speak with defendant Patricia Alvarez.  Patricia Alvarez scheduled an appointment with her to discuss her interest in purchasing a home.

80.     Ms. Hernandez met with Patricia Alvarez at the Century 21 Su Casa office in October 2006.

81.     During that meeting and all their other meetings and conversations, plaintiff and Patricia Alvarez spoke in Spanish.

82.     During that first meeting, Patricia Alvarez told Ms. Hernandez that Gloria Alvarez was her sister and manager.  Patricia Alvarez told Ms. Hernandez that she sold homes and represented owners of homes for sale.

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

83.     During that first meeting, Ms. Hernandez told Patricia Alvarez that she was seeking to purchase a 3 bedroom 2 bath home with her brother and that they planned to rent out a room to assist with mortgage payments.

84.     Patricia Alvarez asked Ms. Hernandez how much she could afford to pay in monthly mortgage payments. Plaintiff responded that she believed that with her brother's assistance, she could afford a monthly payment of $2,000.

85.     Patricia Alvarez stated that monthly payments on a home might exceed $2,000, and that they might be as high as $2,700 per month. Ms. Hernandez believed that with her brother's assistance and with the assistance of a tenant, she could afford a monthly payment of $2,700 per month.

86.     At that time Ms. Hernandez was employed as a porter, earning approximately $1,500 per month in take home pay. Ms. Hernandez also received approximately $500 per month in child support.

87.     Ms. Hernandez was informed and believed, and on that basis alleges, that her brother earned approximately $2,000 per month and that their combined incomes would be sufficient to purchase a home.

88.     During that first meeting, Patricia Alvarez presented Ms. Hernandez with a document that was in English. Patricia Alvarez explained that the document would allow her to represent Ms. Hernandez in negotiations to purchase a home.

89.     Ms. Hernandez reasonably relied on Patricia Alvarez's statements, actions and representations that, among other things, she would act as her real estate agent, and Ms. Hernandez signed what she understood to be a representation agreement.

90.     Patricia Alvarez did not provide Ms. Hernandez with a copy of that representation agreement, stating that she would gather all the documents during the course of the home purchase and loan transactions and would provide those documents to Ms. Hernandez at a later date.

///

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

91.    Patricia Alvarez provided Ms. Hernandez with her cell phone number, and that of her manager, Gloria Alvarez, and informed Mr. Hernandez that in her absence Ms. Hernandez could contact Gloria Alvarez for assistance.

92.    Plaintiff is informed and believes, and on that basis alleges, that Patricia Alvarez was never licensed as a real estate agent and that she knew of the falsity of her statements to Ms. Hernandez when she made them to her in October, 2006.

93.    At Patricia Alvarez's request, in October of 2006, Ms. Hernandez provided Ms. Alvarez with copies of paycheck stubs, a recent bank account statement, and two years worth of W-2s.

94.    In October 2006 Ms. Hernandez had less than $2,000 in her bank accounts.

95.    At no time during their interactions in October 2006 did Patricia Alvarez request further details about her economic condition or the condition of her credit.

96.    In October 2006, Patricia Alvarez took Ms. Hernandez to see three homes that she claimed were not yet available on the market, and stated that she would be serving as the sales agent for at least two of those homes.

97.    Despite the fact that Patricia Alvarez was made aware that Ms. Hernandez was seeking to purchase a home in a location outside of the McLaughlin Avenue at Tully Road intersection in San Jose, Patricia Alvarez urged Ms. Hernandez to view two homes in that area. The first was a still unlisted condominium.

98.    When Ms. Hernandez expressed her doubts and concerns about the neighborhood, Patricia Alvarez responded that she could not be so particular, and that she needed to take what she could get.

99.    The second property in that area that Patricia Alvarez showed Ms. Hernandez was a single family home, also not yet on the market.

100.    This second property was and is the Tobago Avenue property at issue in this action.

101.    The Tobago Avenue property is a two bedroom one bath home sharing a common wall with the adjacent home.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

102.    Patricia Alvarez encouraged Ms. Hernandez to submit an offer on the Tobago Avenue property; she represented that she would be placing it on the market in the near future and that it would sell quickly.

103.    Patricia Alvarez represented to Ms. Hernandez that the Tobago Avenue property had been recently improved and that it would be perfect for a small family like hers. When Ms. Hernandez expressed concerns about the home and the location, defendant Alvarez countered that she would be buying a single family home for $470,000, the same amount that she might pay for a condominium; she stated that the home would appreciate in value and that she could use that equity to purchase another home in the near future.

104.    Patricia Alvarez knowingly and falsely represented to Ms. Hernandez that she was authorized to act as the seller's agent in the sale of the Tobago Avenue property and that she was authorized to act as Ms. Hernandez's agent. In fact, plaintiff has since learned that Patricia Alvarez was not then and is not now a licensed real estate agent.

105.    Patricia Alvarez made those false statements to plaintiff with the intent that she rely on them.

106.    Based on plaintiff's reasonable reliance on Patricia Alvarez's false representations, Ms. Hernandez decided to submit an offer on the Tobago Avenue property at the $470,000 price that defendant Patricia Alvarez had recommended as a fair price for the property.

107.    Later that same day, Patricia Alvarez stated that she would prepare the written offer. At the Su Casa office Patricia Alvarez prepared a document that Ms. Hernandez understood to be a purchase offer. The document was in English.

108.    Patricia Alvarez directed Ms. Hernandez to sign the document and stated that she would submit the offer to the seller and advise her of the seller's decision. Patricia Alvarez did not provide Ms. Hernandez with a copy of the document.

109.    Shortly thereafter, Patricia Alvarez contacted plaintiff, informed her that her offer had been accepted and asked her to meet her at the Su Casa office.

///

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FIRST AMENDED COMPLAINT            17            CASE NO.: C08-01630-PVT

110.    Later, Ms. Hernandez met Patricia Alvarez at the Su Casa office. It was not until this meeting that Patricia Alvarez informed Ms. Hernandez that she had actually increased Ms. Hernandez's offer because the seller had demanded a higher price.

111.    At no time prior to that meeting had Patricia Alvarez informed Ms. Hernandez that the seller had countered with a higher price.

112.    At no time did Ms. Hernandez sign a revised offer or counteroffer or otherwise authorize Patricia Alvarez to submit an increased purchase offer.

113.    When Ms. Hernandez inquired how much the increased purchase price would affect her monthly mortgage payments, Patricia Alvarez assured her that it would work out; that her monthly mortgage payments would not increase substantially, if at all, and that she should not worry. Patricia Alvarez never clearly identified to Ms. Hernandez how much the sale price for the property had increased.

114.    Patricia Alvarez told Ms. Hernandez that she should be able to take possession of the Tobago Avenue property by December of 2006.

115.    Plaintiff now understands and believes that the sale price of the Tobago Avenue property was not $470,000, but $595,000 – *more than 25% more* than what she authorized Patricia Alvarez to offer to the seller.

116.    Defendant Patricia Alvarez knew that the following statements and representations she made to Ms. Hernandez were false when made: (1) that she was authorized under the laws of the State of California to (a) act as Ms. Hernandez's real estate agent and (b) to offer an increased sales price to the Tobago Avenue property owner without her prior permission, and (2) that the increase in the sales price would not increase Ms. Hernandez's mortgage payments substantially.

117.    Patricia Alvarez intended for Ms. Hernandez to rely on those statements and Ms. Hernandez did reasonably rely on her false representations in continuing with the purchase transaction.

118.    At no time during the purchase transaction, or after, did defendant Patricia Alvarez advise Ms. Hernandez of the close personal and/or familial relationship that plaintiff now

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

understands and believes, and on that basis alleges, that Patricia Alvarez had with the sellers of the Tobago Avenue property.

**The January 2007 Loan Transaction**

119. Patricia Alvarez directed Ms. Hernandez to defendant Eddie Burnias, informing her that he could provide her with loan brokerage services.

120. At no time did Patricia Alvarez inform Ms. Hernandez that she could seek loan brokerage services from another person; Patricia Alvarez led plaintiff to believe that Eddie Burnias was the mortgage broker that her office relied upon to help its clients obtain home loans.

121. At no time did Patricia Alvarez describe or disclose to Ms. Hernandez any of the close business relationships and/or common ownership links between Pho and defendants Vision Quest, Mariposa Mortgage, or The Closing Company.

122. In early November 2006, Ms. Hernandez met with defendant Eddie Burnias at the Century 21 Su Casa office. Patricia Alvarez was present during all of Ms. Hernandez's meetings with Eddie Burnias.

123. Eddie Burnias and Patricia Alvarez spoke with Ms. Hernandez exclusively in Spanish at all times throughout their meetings.

124. Ms. Hernandez understood and believed that Patricia Alvarez had provided Eddie Burnias with copies of the check stubs, the bank statement and W2's that she had earlier provided to Patricia Alvarez.

125. Eddie Burnias did not ask Ms. Hernandez to provide him with copies of check stubs, bank statements or other financial information.

126. On November 11, 2006, defendant Eddie Burnias, acting as an employee or agent of defendant Mariposa completed or caused to have completed a Good Faith Estimate that was printed in the English language.

127. Eddie Burnias, acting as an employee or agent of defendant Mariposa explained to Ms. Hernandez that she would be qualifying for a loan with a fixed rate of 1% interest per year. He told Ms. Hernandez that the loan would contain a prepayment penalty that would apply if she refinanced the loan, but not if she sold the home.

128.    Eddie Burnias and Patricia Alvarez told Ms. Hernandez that she would be obtaining a "negative amortization" loan and told her that this was a "good loan," but they did not explain to her why they thought it was a "good loan."

129.    Defendants Eddie Burnias and Patricia Alvarez told Ms. Hernandez that the value of the Tobago Avenue property would increase and that she could use the equity to purchase a different home in the near future.

130.    Patricia Alvarez requested that Ms. Hernandez submit a deposit of $1,000 and shortly thereafter Ms. Hernandez did so, providing a check for $1,000.

131.    As a result of a conversation she had with a friend in November 2006, plaintiff became came concerned about obtaining a negative amortization loan – that it might not be a "good loan," so she attempted to contact Patricia Alvarez to discuss her concerns.

132.    Ms. Hernandez was informed by someone at the Su Casa office that Patricia Alvarez was out of the country, and was directed to speak with her manager, defendant Gloria Alvarez in her absence.

133.    Defendant Gloria Alvarez addressed some of Ms. Hernandez's concerns about a negative amortization loan and directed her to discuss her additional concerns with Patricia Alvarez upon her return.

134.    Defendant Gloria Alvarez and Ms. Hernandez spoke in Spanish at all times mentioned in this complaint.

135.    Shortly thereafter, Patricia Alvarez contacted Ms. Hernandez and assured her that the loan for which she had qualified had favorable terms and was a unique loan product not available to all customers.

136.    Based on the conversations she had with Patricia and Gloria Alvarez and the representations made by them, Ms. Hernandez believed that she had qualified for a good loan product and that it contained favorable terms.

137.    Defendants Gloria Alvarez, Patricia Alvarez and Eddie Burnias knew that their statements that the negatively amortizing loan product they offered was a loan with favorable terms were false when made and they made them so that Ms. Hernandez would rely upon them.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

138.    Based on their statements and representations and Ms. Hernandez's reasonable belief that they were licensed and experienced real estate and/or lending professionals, Ms. Hernandez reasonably relied on their statements and continued with the transaction.

139.    In January of 2007, defendant Patricia Alvarez contacted Ms. Hernandez and informed her that she would need to sign additional documents related to the purchase of the Tobago Avenue property.

140.    On or about January 11, 2007, Ms. Hernandez met with defendant Patricia Alvarez and a notary public at the Su Casa office to sign what she understood to be loan documents.

141.    Ms. Hernandez understands and believes, and on that basis alleges, that defendant Gloria Alvarez's son, Patricia Alvarez's nephew, Ricardo Alvarez, acted as the notary when Ms. Hernandez signed these loan documents on or about January 11, 2007.

142.    At all relevant times during the signing of these loan documents, Ms. Hernandez spoke with all the parties in the Su Casa office in Spanish.

143.    All of the documents presented to Ms. Hernandez for her signature were printed in English and no Spanish language translation was provided to her.

144.    Defendant Patricia Alvarez and the notary instructed Ms. Hernandez where to sign the documents. The terms of the loans for which plaintiff applied were not adequately explained to her. Nor were any of the documents Ms. Hernandez signed explained to her or translated into Spanish.

145.    At that time, neither Patricia Alvarez nor the notary provided Ms. Hernandez with a copy of the documents that she had signed.

146.    It was not until approximately two weeks later, in late January 2007 that Ms. Hernandez was contacted by Patricia Alvarez, notifying her that she could pick up what Ms. Hernandez understood to be copies of the loan documents that she had signed on or about January 11, 2007. All these documents were printed in English.

147.    Plaintiff is informed and believes, and on that basis alleges, that the loan documents she signed on or about January 11, 2007 were incomplete. The copies of those

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    documents she received were incomplete and did not include critical documents, including a

2    HUD-1 statement, Good Faith Estimate, or any Right To Cancel notices.

3        148.    Adequate disclosures related to the purchase and financing of the Tobago Avenue

4    property were never provided to Ms. Hernandez, including disclosures mandated by TILA,

5    RESPA and California law.

6        149.    Defendants Patricia Alvarez and Eddie Burnias knew that the loan documents they

7    provided to Ms. Hernandez were incomplete and did not contain certain critical disclosures

8    related to the purchase and financing of the Tobago Avenue property.

9        150.    Defendants Patricia Alvarez and Eddie Burnias intended for Ms. Hernandez to rely

10   on their false statements and omissions and they used those misstatements and omissions to

11   induce Ms. Hernandez to continue with the transaction; Ms. Hernandez reasonably relied on those

12   statements and representations and continued with the transaction.

13       151.    Since the time of the transaction, Ms. Hernandez has learned that defendants

14   falsified, or caused to be falsified, the loan application that she signed on January 11, 2007.  That

15   loan application contained many false statements concerning, among other things, Ms.

16   Hernandez's income, employment history, and assets including:  (1) that her monthly income was

17   $13,950; (2) that she worked as a "Sr. Marketing D[irector]" for Universal Management with

18   more than 3 years on the job and 12 years experience in the field; and (3) that she had a net worth

19   of $95,387 and a savings account containing $68,000.

20       152.    Plaintiff has also since learned that the loan application that she signed did not

21   contain the loan terms discussed with Patricia Alvarez and Eddie Burnias.  The loan was not a

22   fixed rate loan at 1% interest; instead it was an adjustable rate loan with a 1.25% start rate that

23   adjusted almost immediately, with a ceiling rate of 9.95%.

24       153.    Ms. Hernandez also now believes and understands, and on that basis alleges, that

25   contrary to what was represented to her by defendant Eddie Burnias, her mortgage would have a

26   high prepayment penalty if she paid off her loan for any reason during the first 12 months.

27       154.    Ms. Hernandez also now believes and understands that her HELOC was to be a 15

28   year balloon payment loan at an interest rate of 11.625%.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

155.    Plaintiff is informed and believes, and on that basis alleges, that the loan documents Ms. Hernandez signed before a notary public on January 11, 2007 for the purchase of the Tobago Avenue property were submitted to and examined by defendant Countrywide and defendants Wong and Andin, acting as employees and/or agents of Countrywide.

156.    In late January 2007, Patricia Alvarez informed plaintiff that the Tobago Avenue property was hers and provided her with the keys to the property. Ms. Hernandez understood and believed that the home was her sole property and she and her family moved into the Tobago Avenue property in early February 2007.

157.    Ms. Hernandez was informed by Patricia Alvarez and believed that her mortgage loan payment obligations would commence in March of 2007.

**The Payment Made To The Closing Company**

158.    In February or March of 2007, Patricia Alvarez directed plaintiff to issue a check in the amount of $2,776 to defendant The Closing Company and stated that The Closing Company would forward the payment to Countrywide as payment towards her mortgage loans.

159.    On or about March 10, 2007 Ms. Hernandez sent a check dated March 10, 2007 in the amount of $2,776 payable to The Closing Company, which she understood and believed would be forwarded to the lender to be deducted from her mortgage loan balance.

160.    In April 2007 Ms. Hernandez received a loan statement from defendant Countrywide that did not reflect the $2,776 payment made to The Closing Company.

161.    Shortly thereafter plaintiff contacted The Closing Company and asked when they would be forwarding her payment to Countrywide. Defendant Antunes, an employee and/or agent of The Closing Company, stated that the $2,776 check had been applied to fees and costs associated with the home purchase transaction and advised Ms. Hernandez that she should let the matter go.

162.    Ms. Hernandez attempted to contact Patricia Alvarez on several occasions to discuss the matter, but was unable to reach her.

163.    Plaintiff is informed and believes, and on that basis alleges, that the payment of $2,776 that was provided to The Closing Company was applied to escrow and/or title service

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   company fees and was not deducted from her Countrywide loan balance, contrary to Patricia

2   Alvarez's representations.

3        164.    Defendant Patricia Alvarez knew that her statement that the $2,776 funds that Ms.

4   Hernandez paid to The Closing Company would be applied to her Countrywide loan balance was

5   false when made and she intended for Ms. Hernandez to rely on her statement and Ms. Hernandez

6   did reasonably rely on that statement in making that payment to The Closing Company.

7   **The Forged Loan Documents in March, 2007**

8        165.    Plaintiff is informed and believes, and on that basis alleges, that the two

9   Countrywide loans that presently encumber the Tobago Avenue property were not based upon the

10  loan documents signed by her in January of 2007.  Instead, the loans were based upon documents

11  that contain a signature that is not her own and that was forged to appear as if she had signed

12  them on or about March 27, 2007.

13       166.    Ms. Hernandez did not meet with anyone to discuss, nor did she sign, any loan

14  documents in March 2007.  In March 2007, Ms. Hernandez was already living in the Tobago

15  Avenue property and believed herself to be the rightful owner of that property.

16       167.    Plaintiff is informed and believes, and on that basis alleges, that the loans that

17  presently encumber the Tobago Avenue property were the subject of review by Countrywide and

18  its agents and/or employees (including defendants Wong and Andin) and despite having

19  possession of the January 11, 2007 loan documents containing Ms. Hernandez's actual signature,

20  defendants Countrywide and its employees and/or agents failed to compare the signatures, notice

21  the obvious discrepancy and make inquiries about that discrepancy.

22       168.    Defendants Antunes and Glover, acting in their individual capacities and/or as

23  agents and employees for The Closing Company and other defendants, were aware of the January

24  11, 2007 loan documents and were familiar with Ms. Hernandez's true signature.

25       169.    Antunes, Glover and The Closing Company knew that the March 2007 loan

26  documents contained forged signatures of Ms. Hernandez.  In spite of their knowledge, Antunes,

27  Glover and The Closing Company processed the March 2007 loan documents, thereby

28  representing that those documents contained authentic signatures of Ms. Hernandez, and were

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

---

FIRST AMENDED COMPLAINT                24                    CASE NO.: C08-01630-PVT

legitimate. Defendants Antunes, Glover and The Closing Company did so in order to collect unearned fees.

170.    The Countrywide loans that presently encumber the Tobago Avenue property contain inferior loan terms from those for which Ms. Hernandez applied on January 11, 2007.

171.    Contrary to representations made on certain of the falsified March 27, 2007 loan documents obtained from Countrywide, Ms. Hernandez never provided $54,000 in cash funds to Antunes, Glover or The Closing Company to be applied to the closing costs associated with the loans that encumber the Tobago Avenue property.

172.    Antunes and/or Glover acting in their individual capacities and as employees and/or agents of The Closing Company and other defendants knew of the falsity of their statements that Ms. Hernandez, or someone on her behalf, had submitted closing funds in the amount of $54,000.

173.    The final settlement statement for the transaction also falsely and fraudulently indicated that Ms. Hernandez had contributed $54,000 in closing funds in the transaction to acquire the Tobago Avenue property.

**The Property Appraisal**

174.    Plaintiff is informed and believes, and on that basis alleges, that defendant Kettner, acting in his individual capacity and/or as an employee and/or agent of defendant Aequitas Appraisal Company, did not produce an appraisal report that would support a contract sales price for the Tobago Avenue property of $595,000.

175.    Plaintiff is informed and believes, and on that basis alleges, that defendants Kettner and Aequitas Appraisal Company provided false and/or exaggerated statements concerning the value of he Tobago Avenue property, knew those statements were false when they were made and made those statements to induce Ms. Hernandez to continue with the purchase of the property so that defendants could collect their fees.

///

///

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**The Grant Deeds**

176.    In April or May of 2007 Ms. Hernandez received a Grant Deed for the Tobago Avenue property, document number 19377605. The deed transferring interest in the property to Ms. Hernandez was signed by defendant Andrade on January 16, 2007.

177.    The document was not recorded until almost three months later, at the request of Old Republic Title Company, on or about April 10, 2007.

178.    Defendant Antunes served as the agent who determined the transfer tax for the transfer in interest identified in Grant Deed document number 19377605 and knew or should have known that the loans through Countrywide on the Tobago Avenue property had not yet been distributed as of January 16, 2007.

179.    In May or June of 2007, Ms. Hernandez received a copy of a second Grant Deed, document number 19421834, which fraudulently stated that Ms. Hernandez had appeared before defendant Salazar, a notary public, and had granted an interest in the Tobago Avenue property to Maria Rodriguez on May 7, 2008.

180.    Rodriguez is a person unknown to Ms. Hernandez.

181.    Plaintiff did not appear before notary Salazar on May 7, 2007, did not add her thumb print to Salazar's notary journal, and did not sign any document transferring any interest in the Tobago Avenue property to Maria Rodriguez.

182.    Defendants Patricia Alvarez, Gloria Alvarez, McCain, Eddie Burnias, Mario Burnias, Antunes, Glover, Salazar, Vision Quest, and The Closing Company knew or should have known that this transfer of interest in the Tobago Avenue property from Ms. Hernandez to Maria Rodriguez was falsely obtained by forging Ms. Hernandez's name on documents.

183.    Defendant Eddie Burnias' name is present on this second Grant Deed and in it he declares the value of the transfer tax.

**The Final Loan Terms From the Forged Loan Documents and the Excessive Fees Charged**

184.    The loans that presently encumber the Tobago Avenue property were based on loan documents completed on or about March 27, 2007 that contain Ms. Hernandez's forged signature.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

185. Those loans contain loan terms very different from the loan terms that defendants represented to Ms. Hernandez that she would receive. The first loan from Countrywide originally issued in the amount of $476,000. This loan has an adjustable interest rate that adjusts to a maximum rate of 9.950% and the minimum monthly payment amount is presently $1,531.00. This minimum payment does not cover any principal or the full interest, therefore causing the loan balance to increase every month and additional interest to be charged on the unpaid interest (also known as a negative amortization loan).

186. This loan contains a prepayment penalty provision, contrary to representations made by Eddie Burnias.

187. The loan balance on this first mortgage is $485,988.47 with a reported $12,942.14 in outstanding mortgage payments, penalties, and fees.

188. The second loan is a HELOC from Countrywide in the original amount of $59,500. This loan carries a variable rate of interest that is presently 6.750%, but may increase to as much as 18%. Ms. Hernandez's minimum monthly payment on the HELOC is presently $329.20 and the balance is $63,420.93.

189. The final HUD-1 settlement statement, obtained from defendant Countrywide, indicates that defendants received the following unearned, excessive, unreasonable and/or duplicative fees in conjunction with the loan transaction:

| | |
|---|---|
| Loan Origination Fee: | $ 5,950 |
| Processing Fee: | $ 1,600 |
| Yield Spread Premium: | $ 9,520 |
| "NRCC" (non-recurring closing costs): | $ 10,770 |
| Lender Closing Fee: | $ 725 |
| Tax Service Fee: | $80 |

190. Additional fees that were charged in relation to the March 27, 2007 HELOC include $3,990 for "other charges" and $1,880 in "settlement agent finance charges." These fees were not disclosed on the HUD-1 settlement statement nor were they reflected in the TILA Disclosure Statement.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**Defendants Had Knowledge And/Or Acted As Agents Of Each Other**

191.    Defendant Patricia Alvarez was an employee or agent for defendants Gloria Alvarez, McCain, Vision Quest, Mariposa, Eddie Burnias, Mario Burnias, Andrade and Amezcua and regularly communicated with these other defendants about her representation of Ms. Hernandez in the Tobago Avenue real estate transaction.

192.    Plaintiff is informed and believes, and on that basis alleges, that the other defendants knew that defendant Patricia Alvarez was not licensed by the DRE and could not act as Ms. Hernandez's real estate agent in the purchasing and financing of the Tobago Avenue property.

193.    Defendants knew of the falsity of their representations to Ms. Hernandez that Patricia Alvarez was authorized to conduct real estate transactions and intended for her to rely on those statements so that they could receive financial incentives and rewards.

194.    Ms. Hernandez reasonably relied on Patricia Alvarez's representations because of her direct representations to her and the authority with which she acted while interacting with the other defendants in the course of the transaction.

195.    Gloria Alvarez, a licensed real estate agent, acted as her sister Patricia Alvarez's real estate sales manager.  Based on that position and the conversation she had with Ms. Hernandez regarding the negative amortizing loan for the purchase of the property, Gloria Alvarez was familiar with transactions for the purchase and financing of the Tobago Avenue property and the role that Patricia Hernandez played in those transactions.

196.    Plaintiff is informed and believes, and on that basis alleges, that Amezcua, Andrade, Patricia Alvarez and Gloria Alvarez had a preexisting personal and/or familial relationship when Ms. Hernandez sought to purchase the Tobago Avenue property.

197.    This personal and/or familial relationship was never disclosed to Ms. Hernandez during the course of their dealings.

198.    Defendants Amezcua, Andrade, Patricia Alvarez and Gloria Alvarez knew of the falsity of their statements and omissions concerning their preexisting personal and/or familial

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  relationship and deliberately failed to disclose this information to induce Ms. Hernandez to

2  believe the transaction was at arm's length.

3      199.    Gloria Alvarez knew of her duty as a licensed real estate agent to disclose her

4  relationship to defendants Andrade and Amezcua, and intentionally misrepresented and failed to

5  disclose that relationship in order to mislead Ms. Hernandez into believing the transaction was at

6  arm's length.

7                          **PLAINTIFF'S INJURIES**

8      200.    Plaintiff has suffered significant financial damage as a result of defendants'

9  actions, including, but not limited to receiving loans with higher interest rates than were

10  promised, variable rates despite being promised fixed rates, and being charged exorbitant and

11  unreasonable fees for wholly inadequate services. As a result, Ms. Hernandez has been incurring

12  higher monthly mortgage costs than promised, and these monthly mortgage costs will almost

13  certainly continue to increase in the future.

14      201.    Plaintiff has tendered payments to defendants and their assignees for mortgages

15  that were the result of fraud and were not in fact her liabilities.

16      202.    Ms. Hernandez has struggled to meet her monthly mortgage obligations and is now

17  facing foreclosure. On or about July 9, 2008, Ms. Hernandez received a Notice of Trustee's Sale,

18  indicating the lender's intention to foreclose on her loans and sell her home.

19      203.    Ms. Hernandez is incurring substantial risk of damage to her credit in the event of

20  foreclosure.

21      204.    Ms. Hernandez trusted defendants to be honest with her and act in her best

22  interests in relation to her home purchase. As a result of defendants' intentional misconduct

23  and/or negligence, Ms. Hernandez has suffered persistent emotional distress with physical

24  manifestations.

25      205.    Defendants have illegally gained fees, charges and profits from plaintiff as

26  described herein. Therefore, plaintiff is entitled to restitution.

27  ///

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

---

206.    Defendants were unjustly enriched at the expense of plaintiff, who is therefore entitled to equitable restitution and disgorgement of fees, charges and profits obtained by defendants in the Tobago Avenue purchase and financing transaction.

207.    As a direct and proximate result of defendants' actions, plaintiff was and continues to be damaged in an amount according to proof but not yet ascertained, including, without limitation, statutory damages and all amounts paid or to be paid by plaintiff in connection with the transaction.

208.    There now exists an actual controversy between the parties regarding whether Ms. Hernandez is liable for the loans obtained from Countrywide and the purchase contract for the Tobago Avenue property (which were obtained through fraudulent acts).  Therefore, plaintiff is entitled to declaratory relief.

209.    Unless enjoined, defendants will continue to engage in the unlawful and fraudulent acts described above.  Plaintiff will continue to suffer irreparable harm from defendants' unlawful acts unless relief is provided by this Court.  Accordingly, plaintiff is entitled to injunctive relief.

210.    Plaintiff is entitled to all statutory damages under the claims in this complaint, including, but not limited to, treble damages as provided by California Code of Civil Procedure section 1029.8.

211.    As a direct and proximate result of the defendants' actions, plaintiff has been and will continue to be damaged in an amount according to proof but not yet ascertained, including, without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction, excluding principal payments, if any.

212.    Defendants' acts, as described herein, were willful, wanton, and in conscious disregard of the rights of plaintiff, and on that basis plaintiff alleges that she is entitled to recover punitive damages in an amount to be determined by the court.

///

///

///

///

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Failure To Provide Loan Documents In Spanish**
**In Violation of The California Translation Act, California Civil Code §1632**
**(Against Countrywide, Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez,**
**Andrade, Eddie Burnias, Mario Burnias and McCain)**

213.   Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as if fully set forth herein verbatim.

214.   California Corporations Code §1632 requires that where a contract is negotiated in a foreign language, the contract must be provided in that foreign language.

215.   This code section applies to Countrywide because defendants Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Andrade, Eddie Burnias, Mario Burnias, McCain, and non-defendant Pho were actual or ostensible agents of defendant Countrywide.

216.   Defendants Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Andrade, Eddie Burnias, Mario Burnias, McCain, and non-defendant Pho are actual or ostensible agents of defendant Countrywide due to their status, on information and belief, as approved brokers with Countrywide and/or to their receipt of a yield spread payment from defendant Countrywide.

217.   The loans were negotiated in Spanish.

218.   Defendants failed to provide any loan documentation in the Spanish language.

219.   Pursuant to subdivision (k) of California Civil Code § 1632, defendant Countrywide must rescind the loan.

220.   Pursuant to subdivision (k) of California Civil Code § 1632, defendant Andrade must rescind the purchase contract.

221.   Plaintiff is entitled to rescind the Countrywide loans related to the Tobago Avenue property and is entitled to equitable restitution.

222.   Pursuant to California Civil Code § 1691(b), this complaint serves as notice of rescission.

WHEREFORE, plaintiff prays for relief as set forth below.

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**SECOND CAUSE OF ACTION**
Payment and Receipt of "Kickbacks"
**In Violation of Real Estate and Settlement Procedures Act, 12 U.S.C. §2601 *et seq.* and**
**Federal Reserve Regulation X, 24 C.F.R. §3500 *et seq.***
(Against All Defendants)

223.   Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though fully set forth herein verbatim.

224.   The Real Estate Settlement Procedures Act ("RESPA") and Regulation X prohibit the payment and receipt of kickbacks.

225.   The loans to plaintiff by Countrywide are federally related mortgage loans as defined in RESPA and implemented by Regulation X.

226.   HUD explained Regulation X in their *Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b)*, 66 F.R. 53052 ("HUD's 2001-1 Policy Statement").

227.   HUD's 2001-1 Policy Statement explains that yield spread premiums "allow the broker to recoup up front costs incurred on the borrower's behalf in originating the loan." *Id.* at 53054.

228.   Specifically, defendant Countrywide paid and defendants Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Andrade, Eddie Burnias, Mario Burnias, McCain, and non-defendant Pho received a yield spread premium of $9,520.

229.   Plaintiff is informed and believes, and on that basis alleges, that Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Andrade, Eddie Burnias, Mario Burnias, McCain, and Pho did not incur any up front costs to justify a yield spread premium according to HUD policy. HUD's 2001-1 Policy Statement at 53054.

230.   Moreover, HUD established a two-part test for determining the legality of lender payments to mortgage brokers under RESPA: (1) Whether goods or facilities were actually furnished or the services were actually performed for the compensation paid, and (2) whether the

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  payments are reasonably related to the value of the goods or facilities that were actually furnished

2  or services that were actually performed.  HUD Statement of Policy 2001-1 at 53052.

3      231.    Plaintiff is informed and believes, and on that basis alleges, that defendants never

4  actually performed the services for which they charged.

5      232.    Furthermore, even if services were performed, the value of defendants' actual

6  services rendered in the brokering process of the loans was $0 because defendants falsified

7  plaintiff's loan application; failed to disclose material terms of the transaction; failed to find the

8  best loan possible for plaintiff; failed to obtain and provide plaintiff with Spanish translations of

9  documents as required by California Civil Code §1632; and/or placed plaintiff in a loan she could

10  not afford.

11      233.    According to HUD's 2001-1 Policy Statement, a yield spread premium may not be

12  legal when, *inter alia*, the loan broker does not offer the borrower the option to pay a lower

13  amount of total fees up front.  HUD's 2001-1 Policy Statement at 53054.

14      234.    Defendants never offered plaintiff the option of paying a lower amount of total

15  fees up front.

16      235.    Additionally, defendant Mariposa charged plaintiff a $5,950 loan origination fee

17  for its services which were ultimately unlawful, making the $9,520 yield spread premium grossly

18  unnecessary.

19      236.    Defendants' acceptance of a yield spread premium and defendant Countrywide's

20  payment of that yield spread premium constitutes an unlawful kickback and/or unearned fee

21  under RESPA because it was not reasonably related to the performance of lawful services.

22      237.    Defendant Countrywide is also liable as a lender because it should have followed

23  its underwriting and quality assurance standards in reviewing the brokers' actions: "...common

24  industry practice is that lenders follow underwriting standards that demand a review of

25  originations and therefore lenders typically know that brokers have performed the services

26  required..." HUD's 2001-1 Policy Statement at 53055.  Countrywide knew or should have known

27  from its underwriting processes that defendants Mariposa, Vision Quest, Gloria Alvarez, Patricia

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   Alvarez, Eddie Burnias, Mario Burnias, McCain, and non-defendant Pho did not earn the yield

2   spread premium.

3       238.    In addition, defendant Countrywide is liable because it should not have

4   encouraged the brokers to violate the law by paying a grossly excessive yield spread premium

5   kickback and/or should not have trained the brokers to make such loans under the circumstances.

6   Countrywide is also otherwise liable for the acts of its agents.

7       239.    RESPA also prohibits any person from accepting an excessive or unearned fee.

8       240.    Defendant Salazar accepted notary fees of $230 for services that were never

9   performed, namely meeting with and witnessing plaintiff's signature on a Deed of Trust on or

10  about March 27, 2007.

11      241.    Defendant The Closing Company also accepted unearned fees in the amount of

12  $460 for document preparation, courier, wire fees, and loan tie in fees in March and/or April of

13  2007 that were charged in association with an escrow transaction that were based on fraudulent

14  loan documents that plaintiff understands and believes The Closing Company and/or its agents

15  knew to be fraudulent.

16      242.    Defendants Kettner and Aequitas Appraisal Group accepted unearned fees for the

17  production of an appraisal report that plaintiff is informed and believes, and on that basis alleges,

18  does not support the contract sales price of $595,000.

19      243.    Pursuant to 12 U.S.C. §2607(d), plaintiff is entitled to recover from Aequitas

20  Appraisal Group, Countrywide, Mariposa, The Closing Company, Vision Quest, Eddie Burnias,

21  Kettner, McCain and Salazar, an amount equal to three times the amount of any and all charges

22  for "settlement services" paid directly or indirectly by plaintiff as well as actual damages court

23  costs, attorneys' fees and any other amounts or damages permissible under RESPA.

24      244.    By the actions described herein and as the proximate cause of the defendants'

25  conduct, plaintiff was damaged, in an amount to be proven at trail but not yet ascertained.

26          WHEREFORE, plaintiff prays for relief as set forth below.

27  ///

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**THIRD CAUSE OF ACTION**
**Failure To Make Proper Disclosures**
**In Violation of the Truth In Lending Act, 15 U.S.C. §1601 *et seq.***
**and Federal Reserve Regulation Z, 12 C.F.R §226 *et seq.***
**(Against All Defendants)**

245.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though fully set forth herein verbatim.

246.    The Truth in Lending Act ("TILA") and Regulation Z require the making of certain disclosures in home mortgages. It requires lenders to disclose accurately to the consumer the bottom line total costs of a loan or consumer credit in a "TILA statement." It is a strict liability statute and any misleading, incomplete or inaccurate disclosure violates its terms.

247.    The loans taken out by plaintiff are federally-related loans as defined under this law and defendant Countrywide is a creditor within the meaning of TILA as implemented by Regulation Z.

248.    Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Eddie Burnias, Mario Burnias, McCain, and Pho are agents of Countrywide.

249.    Defendants are liable for failing to provide an accurate and timely TILA statement. Countrywide is also liable for the acts of its agents.

250.    With regard to the loan documents dated in January 2007, these documents were eventually provided to plaintiff in late January 2007.

251.    Thus, the documents provided in late January 2007 were in violation of TILA and Regulation Z because no loan ever issued pursuant to these documents and therefore any disclosures made were false. 12 C.F.R. § 226.17

252.    The loans that presently encumber the Tobago Avenue property was issued without the knowledge or consent of plaintiff – the purported signatures of plaintiff on those documents are forged. In March or April of 2007, defendant Countrywide extended a mortgage loan in the amount of $476,000. In March of April of 2007, defendant Countrywide extended a HELOC. The initial balance of the mortgage loan was $476,000 and the initial balance of the

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

HELOC was $59,500. The balance of each loan has increased to $513,406.70 and $62,054.55 respectively, according to the latest available statements.

253.    Plaintiff did not receive a single document regarding the March 2007 loans and their terms until January, 2008.

254.    Furthermore, the documents given to plaintiff in January, 2008 with regard to the loans that issued in March or April of 2007 were never signed by plaintiff and any documents that purportedly contain her signature are, in fact, forged.

255.    Defendants violated TILA and Regulation Z by failing to provide plaintiff with a Notice of Right to Rescind that was clear, conspicuous, and reflective of the parties' legal obligations with regard to the March 2007 loans.

256.    Defendants accepted fees that were not bona fide and reasonable and were "finance charges" under TILA, therefore requiring proper disclosure.

257.    Defendants violated TILA and Regulation Z by failing to provide plaintiff with the appropriate material disclosure required under TILA including but not limited to the following:

a.    Loan Origination, processing fee and premium paid in the amount of $17,070 and shared by defendants Patricia Alvarez, Gloria Alvarez, McCain, Vision Quest, Mariposa Mortgage, Eddie Burnias, Mario Burnias and their agents and employees;

b.    Notary service fees paid to defendant Salazar in the amount of $230.00;

c.    Appraisal Fee paid to defendant Kettner and defendant Aequitas Appraisal Group in the amount of $375;

d.    Closing cost and tax service fees and interest charges paid to defendant Countrywide, defendant Wong in the amount of $805.

e.    NRCC fees paid to undisclosed parties whom plaintiff is informed and believes, and on that basis alleges, were shared by all defendants in the amount of $10,770.

///

///

258.    Any and all statute(s) of limitations relating to disclosure and notices required under 15 U.S.C. Section 1601 *et seq.* were tolled due to the defendants' failure to effectively provide the required disclosure and notices.

259.    Defendant Countrywide is obligated to rescind the loans that encumber the Tobago Avenue property.

260.    As a direct and proximate result of these violations, plaintiff was and continues to be damaged in a sum according to proof, not yet ascertained, including, but not limited to, statutory damages and all amounts paid or to be paid to defendants, excluding principal payments.

261.    Defendants have been unjustly enriched at plaintiff's expense. Plaintiff is entitled to equitable restitution and disgorgement of profits realized by defendants.

262.    Plaintiff believes that defendants' as described herein were willful, wanton and in conscious disregard of plaintiff's rights, and on that basis allege that she is entitled to recover punitive damages in an amount to be established at trial.

WHEREFORE, plaintiff prays for relief as set forth below.

### FOURTH CAUSE OF ACTION
#### Fraud
#### (Against All Defendants)

263.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though fully set forth herein verbatim.

264.    Plaintiff is informed and believes, and on that basis alleges, that defendants knowingly designed the Tobago Avenue property transaction in such a manner as to have the loans issued by defendant Countrywide to plaintiff fail.

265.    Defendant Countrywide is liable for the actions of its agents Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Andrade, Eddie Burnias, Mario Burnias, McCain, and Pho.

266.    Defendants designed the loans to fail by inflating the value of the property so as to prevent their own loss and/or interest in the property; make plaintiff liable for the default in loan

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  mortgage payments without concern for the injury to plaintiff's credit; and collect excessive and

2  unearned fees in the sale and financing of the Tobago Ave Property.

3     267.   Defendants made false representations to plaintiff regarding:

4     a.     The actual monthly mortgage obligation;

5     b.     The actual amount of the sales price for the Tobago Avenue property to plaintiff;

6     c.     That plaintiff was qualified to borrow enough money to purchase the Tobago

7            Avenue property;

8     d.     That defendant Patricia Alvarez was authorized as a real estate agent by the DRE

9            to act as plaintiff's agent in negotiating the sale price and financing terms for the

10           Tobago Avenue property;

11    e.     That plaintiff's loan obligations were based on the loan documents that she had

12           signed on or about January 11, 2007;

13    f.     That plaintiff's $2,776 payment to defendant Countrywide on or about March 10,

14           2007 was to be applied toward her mortgage payments when in fact, the payment

15           was applied to closing costs associated with the loans fraudulently obtained on or

16           about March 27, 2007.

17    268.   Defendants knew that these representations were false at the time they were made

18  or made the false representations in reckless disregard of the truth.

19    269.   Defendants intended that plaintiff rely on the misrepresentations.

20    270.   Plaintiff reasonably relied on defendants' misrepresentations.

21    271.   As a proximate result of her reasonable reliance on defendants' representations,

22  plaintiff sustained damages in an amount to be proven at trial but not yet ascertained.

23    272.   Plaintiff's reasonable reliance on defendants' misrepresentations was a substantial

24  factor in causing her damages.

25    273.   Defendants are guilty of malice, fraud or oppression as defined in Cal. Civ. Code

26  § 3294, and where appropriate, plaintiff should therefore recover, in addition to actual damages,

27  punitive damages.

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## FIFTH CAUSE OF ACTION
### Civil Conspiracy To Defraud
### (Against All Defendants)

274.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though fully set forth herein verbatim.

275.    Defendants, by their actions, engaged in a civil conspiracy to fraudulently induce plaintiff to enter into the Tobago Avenue property transaction.

276.    On information and belief, defendants entered into an agreement, either explicitly or tacitly to fraudulently induce plaintiff to enter into and be bound by the purchase and loan transaction by intentionally making misrepresentations and concealing material facts as described herein.

277.    All of the defendants' acts were directed toward the goal of the conspiracy.

278.    On information and belief, no defendant took any steps to withdraw from the conspiracy and therefore all defendants are liable for the actions of the others in effecting the conspiracy.

279.    As a proximate result of defendants' conduct, plaintiff sustained damages in an amount not yet ascertained but to be proven at trial.

WHEREFORE, plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Eddie Burnias, Mario Burnias, and McCain)

280.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though fully set forth herein verbatim.

281.    California imposes the same fiduciary duty on real estate agents and mortgage brokers as it does on a trustee in favor of a beneficiary.

282.    Defendant Countrywide is liable for the actions of its agents Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Eddie Burnias, Mario Burnias, McCain, and Pho.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

283.    Defendants Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Eddie Burnias, Mario Burnias, McCain, and Pho owed plaintiff fiduciary duties of utmost loyalty, good faith and diligence.

284.    Defendants Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Eddie Burnias, Mario Burnias, McCain, and non-defendant Pho breached such fiduciary duties by, *inter alia*:

a.    Misleading plaintiff to believe that she could afford a monthly mortgage payment between $2,000 and $2,700;

b.    Misleading plaintiff into believing that her loan contained a fixed rate of interest and that no prepayment penalty would be incurred if plaintiff sold her home;

c.    Misleading plaintiff into believing that the home would appreciate in value and that the sales prices recommended by defendant Patricia Alvarez were reasonable;

d.    Misleading plaintiff into believing that defendant Patricia Alvarez was an authorized real estate agent licensed by the California State Department of Real Estate;

e.    Failing to disclose what plaintiff is informed and believes, and on that basis alleges, to be a pre-existing personal and/or familial relationship between defendants Andrade and Amezcua – who owned an interest in the Tobago Avenue property and defendants Patricia Alvarez and Gloria Alvarez – who acted as agents in the real estate sales transaction for that property.

f.    Failing to explain the terms of the January 2007 loan to plaintiff;

g.    Inducing plaintiff to sign a loan document on or about January 11, 2007 by either misrepresenting the terms or failing to disclose the terms;

h.    Failing to disclose all charges incurred in connection with the purchase of the Tobago Avenue property;

i.    Forging or causing to be forged the March 2007 loan documents that resulted in the loan that currently encumbers the Tobago Avenue property;

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

j.    Aiding Maria Rodriguez to fraudulently record an interest in the Tobago Avenue
property on or about May 7, 2007 without plaintiff's knowledge, consent or
authorization.

285.    Defendants Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Eddie
Burnias, Mario Burnias, McCain, and non-defendant Pho engaged in the conduct alleged herein
for the purpose of advancing their own financial interest and in callous disregard of the
foreseeable financial consequences to plaintiff.

286.    Defendants failed to act diligently by failing to evaluate plaintiff's ability to repay
the loans, disclose all material terms of the transaction, comply with applicable consumer
protections intended to benefit plaintiff.

287.    As a result of defendants' breaches of their fiduciary duties to plaintiff, plaintiff
has sustained damages not yet ascertained but to be proved at trial.

288.    Defendants' conduct was a substantial factor in causing the damages sustained by
plaintiff and, as a direct, proximate and legal result of the above alleged breaches of fiduciary
duties, plaintiff has suffered and will continue to suffer damages in an amount to be proven at
trial, including, but not limited to, damages for loss of property and money, and damages for
emotional distress.

289.    Defendants are guilty of malice, fraud or oppression, as defined in Cal. Civ. Code
§ 3294, and where appropriate, plaintiff should therefore recover, in addition to actual damages,
punitive damages.

WHEREFORE, plaintiff prays for relief as set forth below.

**SEVENTH CAUSE OF ACTION**
**Negligence**
**(Against Countrywide, Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez,**
**Eddie Burnias, Mario Burnias and McCain)**

290.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through
212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though
fully set forth herein verbatim.

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

291.    Each defendant owed plaintiff the duty to act as a reasonably prudent person or entity in the same profession or industry.

292.    As part of its duty to act as a reasonably prudent creditor, Countrywide has a duty to comport with minimum underwriting standards.

293.    On information and belief, Countrywide did not comport with such standards either by not properly underwriting (whereby it would have noticed the forged documents) or by willfully disregarding clearly forged documents.

294.    In addition, Countrywide, Mariposa, Vision Quest, McCain and Pho also owed a duty to act reasonably not only as a creditor but also as a principal that trained, supervised and otherwise assisted those agents working on their behalf.

295.    On information and belief, defendant Countrywide was on notice that Pho, McCain, and Mariposa had a history of violating the California Translation Act. Countywide therefore had a heightened duty to supervise its agents which it failed to do.

296.    Each defendant breached the duty it owed to plaintiff by placing and advising plaintiff to enter into a real estate transaction with detrimental and harmful terms.

297.    Furthermore, Countrywide is liable to the extent that it issued loans with terms and disclosures that it had notice were illegal and/or unfair as specifically alleged herein.

298.    Plaintiff is informed and believes, and on that basis alleges, that Mariposa, Vision Quest, McCain and Pho negligently failed to train and supervise the agents working on their behalf.

299.    Additionally, Countrywide, Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Eddie Burnias, Mario Burnias, McCain, and Pho owed plaintiff a duty to act as reasonably prudent real estate agents, mortgage brokers and mortgage lenders.

300.    A reasonably prudent real estate agent, mortgage broker and mortgage lender would not have directed plaintiff to the loans at issue nor originated such loans.

301.    Countrywide, Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Eddie Burnias, Mario Burnias, McCain, and Pho failed to properly consider, investigate, evaluate or audit plaintiff's loan application and/or ability to repay the loans made.  Additionally, on

1    information and belief, such defendants negligently failed to properly consider the usual

2    underwriting factors for assessing plaintiff's creditworthiness.

3        302.    As a proximate result of defendants' conduct, plaintiff sustained damages in an

4    amount not yet ascertained but to be proven at trial.

5        WHEREFORE, plaintiff prays for relief as set forth below.

### EIGHTH CAUSE OF ACTION
#### Negligent Misrepresentation
#### (Against All Defendants)

8        303.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through

9    212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though

10    fully set forth herein verbatim.

11        304.    Defendants falsely represented to plaintiff, *inter alia*, that the following important

12    facts were true:

13    a.    That the monthly mortgage obligation on the Tobago Avenue property would have

14        a fixed rate of interest at 1% and that the loan's prepayment penalty would not

15        apply if plaintiff sold the Tobago Avenue property;

16    b.    That the true total cost of the property to plaintiff was based on loan documents

17        that plaintiff signed on or about January 11, 2007;

18    c.    That plaintiff received a full and complete set of documents related to the

19        transactions for the purchase and loan obligations for the Tobago Avenue property;

20    d.    That plaintiff was qualified to borrow sufficient capital to purchase the Tobago

21        Avenue property; and

22    e.    That plaintiff had consented to a transfer of interest in the Tobago Avenue

23        property on or about May 7, 2007.

24        305.    Defendants had no reasonable basis for believing that the representations were true

25    when made.

26        306.    Defendants intended that plaintiff rely on the misrepresentations.

27        307.    Plaintiff reasonably relied on defendants' misrepresentations.

28    ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

308.    As a proximate result of defendants' conduct, plaintiff sustained damages in an amount to be proven at trial.  Furthermore, plaintiff's reliance on defendants' misrepresentations was a substantial factor in causing the damages.

309.    As defendants' conduct was fraudulent, malicious and/or oppressive as defined under Cal. Civ. Code §3294, plaintiff should recover exemplary and punitive damages in addition to the damages sought herein.

WHEREFORE, plaintiff prays for relief as set forth below.

### NINTH CAUSE OF ACTION
#### Negligent Supervision
**(Against Mariposa, Vision Quest, Gloria Alvarez, Eddie Burnias, Mario Burnias and McCain)**

310.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though fully set forth herein verbatim.

311.    A broker is required to exercise reasonable care and diligence in supervising his or her employees and agents in any transaction and is bound to exercise his or her skill to the benefit of the principal.  A broker is therefore liable for any damages suffered by the principal as a result of any negligence in the performance of its agents' duties.

312.    Defendants owed plaintiff a duty to act as reasonably prudent supervisors of their employees and agents in their roles as real estate and mortgage brokers.

313.    A reasonably prudent supervising real estate and mortgage broker, and supervising mortgage lender, would not have directed plaintiff to the loan at issue, would not have originated such loans and would not have allowed its employees or agents to provide or originate such loans.

314.    Defendants Mariposa, Vision Quest, Gloria Alvarez, Eddie Burnias, Mario Burnias, and McCain acted negligently in failing to properly supervise all work regarding plaintiff's real estate contracts, including but not limited to offers and purchase agreement contracts, loan applications, loan documentation, and loan origination for the Tobago Avenue property.

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

315.    Mariposa, Vision Quest, Gloria Alvarez, Eddie Burnias, Mario Burnias, and McCain knew or should have known to utilize reasonably prudent practices for supervising the purchase and loan-making process, but negligently failed to do so, in particular by allowing defendant Patricia Alvarez serve as a real estate sales and loan brokering agent to plaintiff and by allowing loan documents to be forged.

316.    By their conduct, Vision Quest, McCain, Mariposa, Gloria Alvarez, Eddie Burnias and Mario Burnias were the proximate cause of damages sustained by plaintiff in an amount to be proven at trial but not yet ascertained.

WHEREFORE, plaintiff prays for relief as set forth below.

## TENTH CAUSE OF ACTION
### Concealment
### (Against All Defendants)

317.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though fully set forth herein verbatim.

318.    Each of the defendants had a duty to disclose those material fats not accessible to plaintiff that existed in defendants' realm of knowledge.

319.    In addition, Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Eddie Burnias, Mario Burnias, McCain, and Pho owed certain fiduciary duties to plaintiff requiring the disclosure of certain material facts.  Moreover, defendant Countrywide owed a duty to prevent its agents from concealing material facts from plaintiff.

320.    Defendants concealed the following material facts from plaintiff, who was not aware of them, including, but not limited to the following:

a.    The actual monthly mortgage obligation for the Tobago Avenue property;

b.    The actual sales price for the Tobago Avenue property;

c.    That plaintiff was not qualified to borrow enough money to purchase the Tobago Avenue property;

///

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

d.   That defendant Patricia Alvarez was not authorized by the DRE to act as plaintiff's real estate agent in negotiating the sale price and financing terms for the Tobago Avenue property;

e.   That plaintiff's loan obligations based on the documents she signed in January 2007 were not relied on to finance the Tobago Avenue property;

f.   That the Countrywide loan obligations presently encumbering the Tobago Ave property were based on March 2007 documents that were never shown to or signed by plaintiff;

g.   That the funds of $2,776 that plaintiff submitted to defendant The Closing Company on or about March 10, 2007 were to be used toward closing costs of the fraudulent March 2007 loan and not toward mortgage payments;

h.   That in May of 2007 defendants would execute or cause to be executed a Grant Deed transferring an interest in the property to Rodriguez, a transaction never approved by plaintiff with a party unknown to plaintiff;

i.   That plaintiff's loan application was falsified;

j.   That plaintiff was not obligated to proceed with the Tobago Ave property transaction because the loans extended by Countrywide were based on false and forged loan documents; and

k.   The true nature of the relationship between the parties.

321.   Defendants Countrywide, Mariposa and Vision Quest are liable for their respective roles in assisting, supervising, requiring and/or otherwise allowing their brokers and agents to conceal material facts from plaintiff.

322.   Defendants concealed, suppressed and failed to disclose the facts with the intent to defraud plaintiff despite their respective duties.

323.   Plaintiff was unaware of the facts and reasonably relied on defendants' deception to proceed to enter into the Tobago Avenue property transaction.

///

///

Fenwick & West LLP
Attorneys at Law
Mountain View

324. As a proximate result of defendants' conduct, plaintiff sustained damages in an amount not yet ascertained but to be proven at trial. Furthermore, plaintiff's reliance on the defendants' misrepresentations was a substantial factor in causing the damage.

325. Since defendants' conduct was fraudulent, malicious and/or oppressive as defined under Cal. Civ. Code §3294, plaintiff should recover exemplary and punitive damages in addition to the damages sought herein.

WHEREFORE, plaintiff prays for relief as set forth below.

### ELEVENTH CAUSE OF ACTION
**Rescission/Cancellation Pursuant to California Civil Code §1689**
**And The Court's Inherent Equitable Authority**
**(Against All Defendants)**

326. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though fully set forth herein verbatim.

327. California Civil Code § 1689 allows for the rescission of a contract where, *inter alia*, it has been obtained by fraud.

328. Plaintiff negotiated the sale of the Tobago Avenue property in Spanish, but all documents related to the purchase of the property were printed in English.

329. The documents that plaintiff signed on or about January 11, 2007 were printed in English.

330. The terms of the loans made by defendant Countrywide to finance the purchase of the Tobago Avenue property with initial balances of $476,000 and $59,500 were never explained to plaintiff and her purported signature of loan documents on or about March 27, 2007 were a result of fraud.

331. Plaintiff never received a copy of the documents related to the purchase of the Tobago Avenue property.

332. Plaintiff never signed any of the loan notes or Deeds of Trust dated on or about March 27, 2007 – on which the loans to finance the Tobago Avenue property are based – and that contain the following unconscionable terms: a teaser introductory rate of 1% that would increase

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

within one month of the commencement of the loan term; a loan with interest-only minimum payments that is negatively amortizing; and a two year prepayment penalty.

333.    Plaintiff received no bargained-for exchange of consideration for the loans made by defendant Countrywide since plaintiff did not sign the loan documents on which these loans are based.

334.    Plaintiff is entitled to rescission and/or cancellation of the purchase and the mortgage loan and the HELOC that presently encumber the Tobago Avenue property pursuant to California Civil Code § 1689.

WHEREFORE, plaintiff prays for relief as set forth below.

**TWELFTH CAUSE OF ACTION**
**Notary Malfeasance in Violation of**
**California Government Code §8207** *et seq.*
**(Against Salazar)**

335.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though fully set forth herein verbatim.

336.    California Government Code §8214 prohibits notary misconduct including fraud and negligence.

337.    Defendant Salazar intentionally and fraudulently misrepresented that plaintiff appeared before her and allowed her to notarize loan documents and Deeds of Trust on or about March 27, 2007, that were submitted to Countrywide. Defendant Salazar knew that the signatures on these documents were not plaintiff's.

338.    Defendant Salazar also intentionally and fraudulently misrepresented that plaintiff appeared before her and allowed her to notarize a Grant Deed that transferred an interest in the Tobago Avenue property to Maria Rodriguez. Defendant Salazar knew that the signatures on these documents were not plaintiff's.

339.    The Deeds of Trust and the Grant Deed were subsequently recorded with the Santa Clara County Recorder's Office and bear defendant Salazar's notary stamp.

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

340.    This recordation thereby divested plaintiff of her undivided interest in the Tobago Avenue property.

341.    California Government Code § 8206 also requires that during the notarization process, a notary public obtain the thumbprint of the signatory to any instrument to be notarized when such instrument affects title to real property.

342.    Plaintiff has never appeared before defendant Salazar.

343.    Plaintiff has never entered her thumb print into defendant Salazar's notary journal for the Deeds of Trust and Grant Deed that were recorded with the Santa Clara County Recorder's Office and that bear defendant Salazar's notary stamp.

344.    Defendant Salazar therefore engaged in official misconduct, fraud or negligence when she notarized documents that contained plaintiff's forged signature.

345.    Defendant Salazar's violations of California Government Code §§ 8207, 8211 and 8224.1 render her liable to plaintiff under California Government Code § 8214.

WHEREFORE, plaintiff prays for relief as set forth below.

### THIRTEENTH CAUSE OF ACTION
#### Violation of the Unfair Competition Act
#### California Business and Professions Code §17200 *et seq.*
#### (Against Aequitas Appraisal Group, Countrywide, The Closing Company, Mariposa, Vision Quest, Gloria Alvarez, Patricia Alvarez, Eddie Burnias, Mario Burnias, Kettner and McCain)

346.    Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 212 inclusive, and the allegations in all of the other claims alleged in this complaint, as though fully set forth herein verbatim.

347.    The California Unfair Business Practices Law at Cal. Bus. and Prof. Code §17200 et seq. prohibits unlawful, unfair or fraudulent business practices.

348.    Defendants have engaged in, and continue to engage in, a pattern and practice of unfair business practices as prohibited by this law. Such conduct also presents an ongoing harm and threat of harm to the public.

///

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

349.    Plaintiff hereby incorporates by reference all other violations in this complaint that constitute unlawful business practices in this Complaint and which are independently actionable under this law.

350.    Plaintiff alleges that defendants have committed unfair business practices that violate established legislative policies against fraud and predatory lending and that resulted in unreasonable harmful impacts against plaintiff.

351.    Specifically, defendants engaged in the following unfair business practices:

a.    Advertising to Spanish speakers and conducting loan negotiations in Spanish but failing to provide Spanish language loan documents as required by California Civil Code § 1632;

b.    The use of high pressure sales tactics and the falsification of loan application information;

c.    Self-dealing at the expense of borrowers;

d.    Artificially inflating home prices;

e.    Inadequately disclosing relationships with other parties and/or role as seller's agent;

f.    Making an offer without plaintiff's consent;

g.    Misrepresenting and assisting in the misrepresentation of costs and charges;

h.    Performing overt acts in furtherance of a scheme to defraud and/or failing to verify the acts of agents doing the same;

i.    Violating TILA and RESPA;

j.    Forgery of a signature on a instrument conveying title to real property ; and

k.    Charging and collecting notary fees in excess of those permitted by law.

352.    Pursuant to Cal. Bus. and Prof. Code § 17203, plaintiff is entitled to an order enjoining defendants from continuing to engage in unfair competition in the State of California. plaintiff will be irreparably harmed if such an order is not granted.

///

///

353.    Defendants have been unjustly enriched at the expense of the plaintiff who therefore is entitled to equitable restitution and disgorgement of profits realized by defendants.

WHEREFORE, plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

Plaintiff respectfully prays for the following relief:

**First Cause of Action: Violation of The California Translation Act**

Rescission;

Disgorgement of profits;

Restitution; and

Any other relief the Court deems just and proper.

**Second Cause of Action: Violation of the Real Estate Settlement and Procedures Act**

Actual Damages;

Disgorgement of profits;

Treble damages;

Restitution;

Court costs;

Attorney's fees;

Injunctive relief; and

Any other relief the Court deems just and proper.

**Third Cause of Action: Violation of the Truth in Lending Act**

Actual damages;

Declaratory judgment declaring plaintiff the right to rescind her loan contracts with defendants;

Disgorgement of profits;

Restitution;

Attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a)(3); and

Any other relief the Court deems just and proper.

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**Fourth Cause of Action: Fraud**

Actual damages:

Restitution;

Punitive damages;

Injunctive relief; and

Any other relief the Court deems just and proper.

**Fifth Cause of Action: Civil Conspiracy to Defraud**

Actual damages;

Restitution;

Punitive damages;

Injunctive relief; and

Any other relief the Court deems just and proper.

**Sixth Cause of Action: Breach of Fiduciary Duty**

Actual damages;

Restitution;

Punitive damages;

Injunctive relief; and

Any other relief the Court deems just and proper.

**Seventh Cause of Action:  Negligence**

Actual damages;

Restitution;

Punitive damages;

Injunctive relief; and

Any other relief the Court deems just and proper.

**Eighth Cause of Action: Negligent Misrepresentation**

Actual damages;

Restitution;

Punitive damages;

1    Injunctive relief; and

2    Any other relief the Court deems just and proper.

**Ninth Cause of Action:  Negligent Supervision**

4    Actual damages;

5    Restitution;

6    Punitive damages;

7    Injunctive relief; and

8    Any other relief the Court deems just and proper.

**Tenth Cause of Action: Concealment**

10    Actual damages;

11    Restitution;

12    Punitive damages;

13    Injunctive relief; and

14    Any other relief the Court deems just and proper.

**Eleventh Cause of Action: Rescission**

16    Rescission; and

17    Any other relief the Court deems just and proper.

**Twelfth Cause of Action: Notary Malfeasance**

19    Actual damages;

20    Restitution; and

21    Any other relief the Court deems just and proper.

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**Thirteenth Cause of Action:  Violation of the Unfair Competition Act**

Restitution;

Disgorgement of profits;

Injunctive relief; and

Any other relief the Court deems just and proper.


Dated: July 18, 2008                                FENWICK & WEST LLP


                                                    By: _____
                                                    for  Emmett C. Stanton (CSB #83930) with permission
                                                    e-mail:  estanton@fenwick.com
                                                    FENWICK & WEST LLP
                                                    Silicon Valley Center
                                                    801 California Street
                                                    Mountain View, CA  94041
                                                    Telephone:  (650) 988 8500
                                                    Facsimile:  (650) 938-5200

                                                    Attorneys for Plaintiff
                                                    PATRICIA M. HERNANDEZ

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 3-6, plaintiff hereby demands a trial by jury.


Dated: July 18, 2008                    FENWICK & WEST LLP

                                        By: _____
                                        for  Emmett C. Stanton (CSB #83930) with permission
                                        e-mail:  estanton@fenwick.com
                                        FENWICK & WEST LLP
                                        Silicon Valley Center
                                        801 California Street
                                        Mountain View, CA  94041
                                        Telephone:  (650) 988 8500
                                        Facsimile:   (650) 938-5200

                                        Attorneys for Plaintiff
                                        PATRICIA M. HERNANDEZ